## SIMS v. CANFIELD, EX'R. OF JOHNSON.

1. The distinction between a pledge and a mortgage of personal estate is, that in the former, the title is retained by the pledgor; but in the latter, it passes to the mortgagee, subject to be divested if the condition of the mortgage is performed.

2. It is yet an open question in this State, whether the mortgagor, after a default in the condition of the mortgage, can divest the legal title of the mortgagee then in actual possession, so as to entitle the former to maintain trover or detinue against the latter.

3. But if it is admitted that trover or detinue, under such circumstances, will lie, Chancery, notwithstanding, has jurisdiction of a bill filed by the mortgagor to redeem a mortgaged slave.

4. In defence of a bill to redeem, it is not necessary for the defendant to plead or insist on the statute of limitations, if the complainant in his bill, or by evidence in support of it, shews that he has no subsisting title.

5. When slaves have been passed under a claim of title for a period analogous to the statue of limitations, the possession operates not only as a bar, but also invests the possessor with the absolute property.

6. The action of detinue is the only one at law analogous to a bill to redeem a specific chattel; and so far as the statute of limitations can have any bearing on such a bill, it is to be considered precisely as if it was an action of detinue at law.

7. The act of 1806, [Digest 152, s. 2,] which provides that no action shall be commenced against an executor or administrator, in such capacity, until after the expiration of six months from the grant of administration, has no application to the action of detinue; as such an action cannot be instituted against an executor or administrator in his representative capacity.

8. It is questionable whether the act of 1806, (Digest 152, s. 2,) was intended to apply to any suit in equity. But Courts of Equity are governed by its analogies in the same manner as by statutes of limitations.

9. A bill shows the mortgage of a slave the 29th June, 1839, to secure a sum of money to be paid in two months. The mortgagee took peaceable possession of the slave in October of the same year, and held it under claim of title until his death, when it passed to his executor, and they together held it for more than six years previous to suit commenced. *Held*, that the claim of the mortgagor was extinguished by lapse of time; and that the title of the mortgagee had become indefeasible.

10. When possession of the mortgaged slave is retained by the mortgagor until the default in the condition, the statute does not commence running until the mortgagee acquires actual possession of the slave.

Writ of error to the Court of Chancery of the Third District of the Southern Division.

BILL to redeem a slave mortgaged by the complainant Sims to the defendant's testator.

The bill charges, that the complainant, in June, 1829, borrowed one hundred and sixty dollars from the defendant's testator, which was to be paid at a certain period, which is left blank in the bill. A bill of sale, absolute in its terms, was executed by the complainant; but, as he charges, it was understood by both parties to be intended merely as a mortgage to secure the payment of the borrowed sum; and the slave was to remain with the complainant until default of payment. The bill of sale bears date the 29th June, 1829. Soon after the execution of the bill of sale, the defendant's testator insisted that his title to the slave would become absolute if the money was not paid at the day appointed. The complainant did not pay the money at that time, or deliver the slave; and the defendant's testator soon afterwards took possession of the slave in a peaceable manner. The complainant asserts that he, sometime afterwards, tendered the sum borrowed to the defendant's testator, and demanded the slave, which was not returned, on the pretence that the money was not paid on the day it became due; and the defendant's testator continued in possession of her until the time of his death, converting the profits of her labor to his own use, without rendering any account thereof to the complainant. The bill also charges that the defendant's testator died, having first made and published his last will, by which he appointed the defendant and others his executors, who have been duly qualified as such, and have ever since, as executors, retained the possession of the slave. The bill prays an arrest, &c., and that the complainant may be permitted to redeem the slave out of the value of her labor, and that the remainder may be paid over to the complainant. The bill also contains the usual prayer for general relief.

The subpœna was issued on the 13th day of August, 1836, and recites that the bill was filed on the 3rd day of March of the same year. The bill prays process returnable to the first Monday of March; but there is no memorandum or other evidence in the record, to show when it was filed other than is stated in the subpœna.

The answer of the defendant admits his appointment and

qualification as sole executor, and his possession, in that character, of the slave. It also denies all personal knowledge of the allegations of the bill, except so far as they are sustained by the bill of sale, which is insisted on, as absolute in its terms, and evidencing a sale. It denies all knowledge of any attempt by the complainant to regain the possession of the slave; and insists that his testator was in possession of her four years previous to his death; and that he, the defendant, has been in possession, as executor, for three years together, making seven years that the complainant has omitted to press his claims. This, however, is neither pleaded in bar, nor formally insisted on, as a defence, except so far as it asserts a *bona fide* title to the slave.

Several witnesses were examined by the complainant, one of whom is the subscribing witness to the bill of sale. This witness states that the bill of sale was read to the complainant, who objected to its terms as conveying the absolute title to the slave, when a mortgage only was intended; but executed it on being assured by the defendant's testator that it should only operate as a mortgage; and if the money was repaid then the title would be determined. This witness also proves, that the defendant's testator went to the house of the complainant and forcibly took the slave soon after the expiration of the time for which the money was loaned. The money was to be repaid in two months. The time is not stated at which the slave was taken possession of by the defendant's testator.

Another witness proves that a tender of the sum due was made in the fall or winter of 1829, and the defendant's testator then refused to receive the money and surrender the slave, on the ground that the money had not been paid to him at the day; and he then declared that he would not give up the slave until compelled to do so by law. This witness does not state the time of the tender with certainty; but the previous witness says it was made about the 1st of October, 1829, as he was informed by the defendant's testator.

A witness examined on behalf the defendant, says he was present at a conversation which he believes took place in August or September, 1839, between the complainant and the defendant's testator, in which the former offered to sell the slave,

now the subject of this controversy; and it was agreed that the latter should advance a sum of money; and if the former did not return it at the day agreed on, he was to make a bill of sale of the slave in satisfaction of the debt. After this, he heard the complainant say to the defendant's testator, that he had been unable to obtain the money to repay him; and he considered the slave to belong to the latter according to the agreement— That he was willing to make him a bill of sale at any time when called on; but as his wife was unwilling to part with the girl, he wished to hire her for two or three months, believing in that time his wife would be reconciled to the arrangement. The witness thinks that the slave was then in the possession of the complainant.

The Chancellor decreed, that the bill should be dismissed considering that the complainant had an adequate remedy at law; and also, because the demand was stale, and if within the jurisdiction of Chancery, ought to be governed by the same rules of limitations as would govern a Court of law, if the case had there been presented.

The complainant now prosecutes this writ of error; and assigns that the Chancellor erred in dismissing his bill.

JAMES B. CLARK, with whom was Mr. PECK, for the plaintiff in error, insisted—

1. That the complainant had no remedy at law by reason of the tender. This did not revest the title, which had become absolute in the mortgagee on the default of payment at the day appointed, and by the subsequently acquired possession. (Thompson v. Patton, 5 Littel 74; Demarest v. Wyerkoop, 3 John. Ch. 129; Brown v. Lipscomb, 9 Porter 475.)

2. The statute of limitations is neither pleaded nor insisted on by the answer; if it had been, the evidence might have been such as to have destroyed the bar.

But the statute can have no effect; because the death of the mortgagee prevented any suit from being instituted, either at law or equity, for more than six months; and as no time is disclosed when the letters testamentary were granted, the plaintiff is entitled to consider the longest period which could occur. (Houpt v. Adm'rs. of Shields, 3 Porter 247; Hutcheson v. Tolls, 2 Porter 44.)

JONES, for the defendant in error, insisted that the evidence in such a case as this, should leave no doubt as to the parol condition by which this bill of sale was sought to be turned into a mortgage.

The evidence is contradictory on this point, as one witness states conversations between the parties, from which a conditional sale may be inferred; and the great lapse of time is persuasive to show that this was probably the true contract.

If, however, it was a mortgage, the title was re-vested in the complainant by the tender, and he could then have maintained detinue or trover for the slave. [Deshazo v. Lewis, 5 S. & P. 91; Harrison v. Hicks, 1 Porter 423.] And, consequently chancery has no jurisdiction.

The defence arising from lapse of time, is sufficiently raised and insisted on by the answer; but if it was otherwise, this is a matter which must be noticed as evidence of title in the defendant at the time when the bill was filed.

If the statute operates until the commencement of the suit, and this is to be determined by the issuing of the subpœna, more than six years and nine months had elapsed. *A lis pendens* is only notice from the time of service of the subpœna.

GOLDTHWAITE, J.—1. There is no difficulty in arriving at a satisfactory conclusion on the first point presented by the argument in this case, either upon the facts, or the law which should govern them.

The testimony of the subscribing witness to the bill of sale, is clear and distinct that it was intended and represented as a mortgage, though absolute in its terms. The mortgagor, doubtless, was ignorant of the rules by which Courts of equity control contracts of this description; and considered himself entitled to hold the slave as his own after the default. The fact that it was a mortgage, is also shown from the declaration made by the defendant's testator when the money was tendered. For it was then refused solely on the ground that it had not been paid at the day appointed; and, therefore, it was not accepted and the slave delivered. The testimony of the sole witness examined on the part of the defendant, does not outweigh, or indeed weaken, that given by the other witnesses;

because it is evident that the first conversation to which he speaks, must have been held before the bill of sale was executed; and that the last one place took after the default of payment, but before the slave was taken from the complainant's possession. It is highly probably that both parties considered the property in the slave as absolutely vested in the mortgagee by the default, and that neither of them was aware of the continuance of the right to redeem. This erroneous impression most probably caused, not only the declarations of the complainant, but also the subsequent action of the defendant's testator in taking forcible possession of the slave.

The distinction between a mere pledge and a mortgage of personal chattels, is one frequently stated in the books, and seems to be perfectly well settled. A pledge is, when a thing is deposited as a security to be returned to the pledgor when he has redeemed it. In this the title is retained, although the possession is parted with. In a mortgage, the title is conveyed, subject to be divested if the condition of the mortgage is performed. (Cortilyou v. Lansing, 2 Caine's Cases in Error 200; Jones v. Smith, 2 Vesey.

2. It is very possible, as the law of mortgages is understood at this day, that a tender of the money due, if made before the mortgagor acquires the possession, after a default in the condition, may destroy the title of the mortgagee. However this may be, we find no adjudicated case which determines that a title once vested by possession and default, can be divested by a mere tender. The case of Deshazo v. Lewis, 5 S. & P. 91, does not present the question; for there the time of payment was extended by a parol agreement, and the tender was made before the expiration of the extended period. The only point decided was, that the parol agreement was admissible in evidence to qualify the written instrument. But in the case of Brown v. Bement, 8 Johnson 96, the precise question came before the Supreme Court of New York, which decided that a tender made to the mortgagee in possession, and after a default, did not revest the title in the mortgagor so as to enable him to maintain trover against the mortgagee.

3. But if it was admitted, that the mortgagor may, under such circumstances, have his action of trover or detinue against

the mortgagee, it will not follow that chancery is ousted of the jurisdiction of a bill to redeem the mortgaged chattel. Even a pledgor may go into equity, whenever it becomes necessary to have an account. [2 Story's Eq. 298, and cases there cited.] Whenever slaves are the subject of a mortgage, it most frequently happens, that it is necessary to take an account, as the mortgagee is in possession, and consequently in receipt of their profits. This is here shown to be the case by the allegations of the bill; and, therefore, we consider that in this case the Court of chancery had jurisdiction.

4. It is argued, that the defence of the statute of limitations is not set up by the answer; and, therefore, is not entitled to be considered. It is probable that the pleader intended to present this point distinctly; but in this, we think he has failed, as the statute is neither pleaded nor insisted on in definite terms. It is only by coupling the two possessions together, that we are enabled to ascertain the length of time that the defendant and his testator have had the possession. It is equally clear, however, that the lapse of time is stated and relied on as a bar. But we are by no means satisfied that it is incumbent on the defendant to set out his title in such a case as this, when he claims the property in controversy. The complainant, in our opinion, must show such a title as will enable him to maintain the suit; and if he has no title, it is unnecessary to examine what defence is made by the defendant. [2 Story's Eq. Pl. 378–390, and cases there cited; Cholmondelly v. Clinton, 1 T. & R. 107–109; Hardy v. Reeves, 4 Vesey 479; House v. Peck, 6 Sim. 51.

5. It has been decided with relation to slaves, that their possession for a period analogous to that fixed by the statute of limitations, under a claim of title, not only operates to bar an action, but also, to invest the possessor with the absolute property. [Shelby v. Guy, 11 Wheat. 361; Brent v. Chapman, 5 Cranch. 358; Newby v. Blakely, 3 H. & M. 57; Story Con. L. 488.]

The same rule applies to the possession of real estate; and it has been repeatedly held, that the holder of a mere equitable title cannot sustain a bill when his right of entry would

have been barred at law, if his title had heen legal instead of equitable only. [2 Story's Eq. 736, and cases there cited.]

6. The action of detinue is the only one at law which is at all analogous to a bill to redeem a specific chattel. In that, the chattel is recovered with damages for its detention. When the bill is to redeem, the decree is for the delivery ; and if necessary, an account will be taken to ascertain the reasonable profits if any have accrued. In either case, it is conceived, the plaintiff must fail, if he has no subsisting title in himself at the time when the suit is commenced.

The action of trover has no analogy to such a suit in equity; because the recovery is in damages merely, and interest on the value of the chattel when converted, is given from the time of the converson in lieu of profits. So, also, the recovery in trover is nothing more than a debt against the personal assets of a deceased convertor ; but in a bill in equity, the specific chattel may be pursued and recovered from the estate, whether insolvent or otherwise ; and the account only would be a general charge on the estate.

So far as the analogy of the statute of limitations can have any bearing on this case, it may be considered precisely as if the action was detinue in a Court of law. Such an action certainly could not be sustained against an executor or administrator as such, although the possession might be cast on him in his representative capacity. It is unnecessary to consider whether such an action is abated by the death of the defendant, or whether it would in such a case survive against the present representative. The action of trover is one which survives by statute. (Aikin's Digest 259 s. 2.)

7. There can be no pretence but this complainant, if his remedy at law was open in consequence of the tender, could have commenced his action of detinue against the defendant at any time after his testator's death when he was possessed of the slave ; and such suit would not be within the influence of the act of 1806, [Aikin's Digest 152 s. 2,] which prohibits the institution of any suit against an executor or administrator, *in such capacity*, till after the expiration of six months from the time of proving the will, &c., or the grant of administration. This statute, not applying to such a case, the decision of the

Court in Tolls v. Hutchinson, 1 Porter 44, and Houpt v. Shields, 2 Porter 247, that the time during which suit could not be brought should not be added to the statute, can have no application.

8. It may be questionable whether this statute was ever intended to control the action of the Courts of equity, for many of its provisions are utterly incompatible with any such an idea; thus, for instance, by the statute, no suit can proceed when the estate of a deceased person is represented insolvent. Again : it may frequently be necessary to commence a suit against an administrator, &c., in his representative capacity, to enjoin a sale, or stay some other action by him in his representative capacity, before the expiration of the six months. This statute is, however, binding on Courts of equity by its analogies, in the same manner as the statutes of limitations are.

9. Having shown that this bill in equity is to be governed by its analogy to the action of detinue, it is sufficient to observe, that the case of Shelby v. Guy, and the other cases before cited, are conclusive that an adverse possession of six years under claim of title, gives such a right of property as would enable the defendant to recover the slave from the complainant, if, after the expiration of that period, he had come to its possession ; and, consequently, there is no doubt of the efficiency of the same facts when used as a bar to his action.

The question then arises, does the complainant shew on the face of his bill, that he had no subsisting title when he commenced this suit ?

The bill is deficient in setting out the dates of many important facts ; and only shews when the mortgage was executed. This was the 29th June, 1829 ; but neither the period fixed by the contract for the repayment of the money loaned, nor the time when the actual possession of the slave was acquired by the defendant's testator, is stated. According to the rules of strict pleading, it was incumbent on the complainant to have been precise in his allegations with respect to each of these particulars. The first was necessary to enable the Court to determine when the mortgage became absolute in consequence of the non-payment ; and the last, in order to properly state the account, as the defendant would be liable for the services of

the slave only from the time of actual possession. It is true[*] that if precise dates had been inserted, the complainant might not have been held to strict proof of the time as stated; and for this reason, the bill may be assumed as sufficiently precise to escape a demurrer. But when the proof establishes the dates, the complainant must make out a case, or his bill must be dismissed. The evidence of the subscribing witness shows that the money was to be repaid in two months; consequently, the mortgage was forfeited on the 29th August, 1829. The same witness proves that the defendant's testator was in possession of the slave about the 1st of October of the same year, at which time the money was tendered and refused. Since that period, no recognition of the complainant's right of redemption is averred by the bill, or shewn by the evidence.

10. In the case of Humphries v. Terrell, 1 Ala. Rep. 650, we held that, where the period of redemption was indefinite, the statute began to run from the execution of the mortgage; and if fixed, then from the day of the default. Then, however, the mortgagee was in possession from the time of the mortgage.

In the present case, so long as the mortgagor continued in possession of the slave, the statute did not begin to run, but must have effect only from the time when possession was acquired by the mortgagee; for, until this period, the existence of the mortgage, as such, must be considered as admitted by the mortgagee. The bill was filed in the office of the Clerk on the 3rd March, 1836; but if this is admitted to be the period when the suit must be considered as having a legal inception, a point not now necessary to be determined, then more than six years have elapsed during which the defendant and his testator have had the adverse possession of the slave, claiming to hold it free from any condition.

Under these circumstances, if the title of the complainant to the slave had been legal, instead of equitable only, it would have been extinguished by lapse of time, and that of the defendant become complete by mere force of the adverse possession.

In the case of Humphries v. Terrell, before cited, we decided that Courts of equity govern their decisions by by analogies

drawn from the statutes of limitations; and never permit equi‑ table claims to be enforced when legal claims of the same kind would be barred.

Our conclusion is, that the Chancellor's decree is free from error, and must be affirmed.