## DOYLE v. BOULER.

1. A testator declared that he lent a negro girl to each of his four daughter's *nomination*, during their respective lives, at their death to go to their children lawfully begotten of their bodies; "and if any children decease leaving no heirs lawfully begotten of their bodies, their part must be equally divided among the rest of my children, and their children lawfully begotten of their bodies." After making some provision in respect to the treatment of his slaves, the testator added that "they are are only lent to my children during their lives, and given to my grand children." *Held*—that the limitation over in favor of the grand children was not too remote, and the first takers did not take an absolute estate in the slaves.

2. Where a woman who has a female slave and her increase, settled upon herself and children by her father's will, marries and survives her husband, and afterwards goes with the slaves and resides with a son of her husband for twenty years—all the time exercising the uninterrupted control over them, it cannot be assumed that the son had possession of them.

3. Where the possession of personal property, is held adversely, for a period beyond that prescribed by the laws of the State as a bar to an action, the original owner cannot successfully assert a title against such possessor, and the bar will be recognized in any country to which the property may be taken.

Writ of error to the Circuit Court of Clarke County.

A *fieri facias* issued from the Circuit Court of Clarke, at the suit of the plaintiff in error, against the goods, &c., of John Bouler, was levied on the following slaves, to wit, Robin, Charlotte, Rachel, Elvira, Julia, Betsy, Tom, Mina, Harriet, Luke, Jane, and Helen, as the property of the defendant in execution; of all whom were claimed by the defendant in error, and bond executed to try the right as required by the statute. An issue being made up, the cause was submitted to a jury, who returned a verdict in favor of the claimant, and judgment was rendered accordingly.

On the trial the plaintiff in execution excepted to the ruling of the Court. From the bill of exceptions it appears that it was shown, that the claimant was eighty years old, and is the daughter of Gabriel Toombs, deceased; she then offered as evidence a copy of the will of her father, dated the 8th day of December, 1795, which was admitted to probate on the 25th of February, 1799, in the Court of Ordinary of the County of

Doyle v. Bouler.

Wilkes in the State of Georgia. In this will are the following clauses : " Likewise, I do give unto my wife Ann Toombs, and to my four daughters, Mary Barrett, Elizabeth Toombs, Ann Dawson, Parmelia Dawson Toombs, the tract of land in Wilkes county, lying on Beaver dam, to be equally divided among them at my wife's death : Likewise, to each of my daughters, lend a negro girl, horse and saddle, and bed and furniture, during their lives; at their death to go their children lawfully begotten of their bodies. And the rest of my estate, negroes, household goods, &c., I do give unto my wife Ann Toombs, during her life and widowhood ; at her death to go to be equally divided among my six children; and if any of my children die before my estate is divided, their children lawfully begotten of their bodies stand in their place ; and if any of my children decease, leaving no heirs lawfully begotten of their bodies, their part must be equally divided among the rest of my children, and their children lawfully begotten of their bodies." After making some provision in respect to the manner in which he desires his slaves treated, &c., after his death, the testator declares, that " they are only lent my children during their lives, and given to my grand children."

It was proved that the claimant married William Bouler, the father of the defendant in execution, but had never had a child, that the slaves in controversy, or their ancestors upon such marriage went into the possession of her husband. At the death of William Bouler, the defendant in execution administered upon his estate, but did not return an inventory of the slaves in question, or claim them as part of the same. Soon after the death of her husband, about twenty years ago, the testator and the slaves went to the defendant's house, where they have ever since remained. William Bouler was the father of four children, by a former marriage, of whom the defendant in execution was one, all living at the time of his death ; that there had never been a division of the slaves between them, or any other division of, or administration upon them.

Upon these facts, the plaintiff prayed the Court to charge the jury, that whatever interest William Bouler had in the slaves in question, descended to his heirs and representatives; and that the defendant in execution had an interest, that could be levied on and sold. The Court refused thus to charge, and

instructed the jury, that the plaintiff's *execution* could not be levied on the negroes, but they belonged to the estate of Wm. Bouler, deceased; that if they had been administered on, and the defendant had received his distributive share, that share would be subject to the execution.

It was further shown that one of the daughters of Gabriel Toombs married a man named Dawson, but is dead; that Robert T. Dawson is a son of that marriage, by whom the claimant proposed to prove certain facts, and who was permitted to be examined as a witness, notwithstanding it was objected by the defendant that he was interested, and therefore incompetent.

LESLIE, for the plaintiff in error, made the following points: 1. The limitations in the will of Gabriel Toombs are too remote to operate, and the first taker took an estate which vested in her husband, and upon his death, in his administrator and distributees. [Price v. Price, 5 Ala. Rep. 581; Clay's Digest, 157, § 37.]   2. If the slaves were the estate of Wm. Bouler, the defendant in execution has an interest in them which may be sold under execution. [McGreggor & Darling v. Hall, 3 S. & P. Rep. 397; The P. & M. Bank v. Willis & Co. 5 Ala. Rep. 770.] The possession of the defendant in execution invested him with an interest that may be sold under execution. [Clay's Dig. 255, § 2, 4; 326, § 78.]   4. Dawson was as incompetent witness. [Greenl. on Ev. 427, 5.] The Court misled the jury in instructing them the slaves belonged to the intestate's estate, and then refusing to charge that the limitation in the will of Gabriel Toombs was void.

BLOUNT, for the defendant in error. The limitation in the will was not too remote; it does not refer to an indefinite failure of heirs, but to heirs living at the death of the first takers. In fact they take nothing more than a loan of the property bequeathed to them, respectively, during life, if they have then no lawfully begotten children, the children or grand children of the testator are entitled to it.

The evidence does not authorize the assumption that the defendant in execution had possession of the slaves for twenty years or any other time. But it was satisfactorily shown that

the claimant had an uninterrupted possession for twenty years, without the assertion of an adverse claim from any source. This was certainly sufficient to give her a title against the whole world; unless those having a better right have been under a disability which prevented them from suing.

Dawson, it is clear had no interest in the controversy; for however the case might be decided his rights could not be affected. A remote interest, merely, in the question, and not in the event of the suit, does not disqualify a witness. [Bent v. Baker, 44th No. Law Lib. Eng. & Am. notes 56.]

COLLIER, C. J.—From a view of so much of the will of Gabriel Toombs as relates to the bequests to his daughters, we think it clear, that the limitations over after their death is not too remote to operate. The testator explicitly declares that, *if any of his children die leaving no heirs lawfully begotten of their bodies, their part must be equally divided among the rest of his children:* and as if to leave no doubt of his intention, and to "make assurance doubly sure," he again says, that *the negroes are only lent to his children during their lives, and given to his grand children.* The terms "heirs of the body," &c. are words of purchase in the sense in which they were used, and does not postpone the period of the failure of the first takers heirs to a period more remote than their respective deaths. This is satisfactorily indicated by the terms " die" and "leaving," as used in the first clause noticed, and the declaration in the last, that he loaned the slaves to his children, and gave them to his grand children. Meaning, no doubt, by "grand children," the offspring of the first taker, and if none were living at the death of the latter, then the share of such legatee would revert, as the will provides, to other children of the testator or their descendants. [Darden's Admr's, et al. v. Burn's Admr's and another, 6 Ala. Rep. 362.] From this view of the will it results, that William Bouler could take nothing more than an estate for the life of his wife in the slaves bequeathed her by her father. Whether this interest vested in his administrator, or his children, and could be sold to pay the debts of the latter, without being distributed to them, are questions which we need not consider, as there is another point in the cause on which we prefer to rest our judgment. 32

There was no proof that the defendant in execution had the possession of the slaves at any time, unless that could be deduced as a legal conclusion, from the fact, that they lived with him under the control of the claimant, who was an inmate of his family. That no such deduction can be made we think clear, especially when it was proved, that her possession was uninterrupted for twenty years. Taking this to be true, and the slaves cannot be subjected to the plaintiff's execution, conceding that the defendant as a distributee of his father's estate was entitled to a share of them during the claimant's life. It is an acknowledged principle of law, that detinue may be maintained upon the mere ground of a previous possession, originally acquired without force or fraud, and enjoyed for a sufficient length of time to make the statute of limitations an available bar. *And further*—where the possession of personal property is held adversely, for a period beyond that prescribed by the laws of the State as a bar to an action, the original owner cannot successfully assert a title against such possessor; and the bar will be recognized in any country in which the property may be taken. [See Goodman v. Monks, 8 Porter's Rep. 95, and cases there cited.]

If then the defendant in execution ever had a right to the slaves, he lost it previous to the levy of the execution by the possession of the claimant fairly acquired, and acquiesced in, for more than six years. The claimants title by prescription not only entitled her to sue for the property, if dispossessed, but it was paramount to that of all others who could not invoke the saving clause of the statute of limitations. That the defendant does not come within this latter category, appears from the fact, that he administered on his father's estate more than twenty years ago.

From this view, it results that the plaintiff in execution has not been prejudiced by the several decisions of the Circuit Court, in charging or refusing to charge the jury; and that the admission of Dawson's testimony, whether the witness was interested or not, worked no injury. The judgment is consequently affirmed.