## FREEMAN, ADM'R, v. BALDWIN.

1. A deed by which F acknowledges himself indebted to B in the sum of $1,600 with condition, "that if the above bound H F, does convey, and deliver, to said D B, his heirs, &c., a certain negro woman, Rachel, and her child, named Reuben, conveyed and sold to the said H F, by the said D B, when the said D B pays the said H F, five hundred and sixty-two dollars, then this bond to be void," &c., whether regarded as a mortgage, or conditional sale, in the absence of proof of fraud, mistake, or surprize, cannot be explained by parol proof.

2. When the answer denies the execution of such an instrument, or alledges that it has been altered since its execution, by adding the condition, the execution must be proved.

3. If the instrument was valid, a bill could not be entertained to redeem the slaves, fifteen years after the execution of the instrument. The parties having lived together in the State of Georgia, after the execution of the bond for the period of time prescribed by the stotute of limitations of that State,

to create a bar to a recovery at law, the title became perfect, and will protect the possession against a suit in this State, his possession having been adverse to that of complainant.

4. To enable the court to declare an absolte bill of sale to be but a security in the nature of a mortgage, the proof must be clear and convincing. Loose declarations of a trust, especially after great lapse of time, will not be allowed to overturn the written contract of the parties.

5. To make an absolute bill of sale, with a defeasance, operate as a mortgage, they must be executed at the same time.   If the defeasance be executed afterwards, without consideration, it is a *nude pact.*

Error to the 16th Chancery Division.    Before the Hon. W. W. Mason.

THE bill was filed by the defendant in error, to redeem certain slaves, under an instrument under seal, executed in the State of Georgia, on the 22d February, 1825. The facts, and the testimony, so far as they are necessary to illustrate the opinion of the court, are sufficiently detailed in the opinion of the court.    The chancellor, upon the final hearing, decreed that the complainant had the right to redeem the slaves, directed an account to be taken, &c.    This is now assigned as error.

E. W. PECK and G. W. GUNN, for plaintiff in error.

I.  Conceding for the present, that the bond set out in the bill to have been made by the plaintiff in error, and that it is not void by reason of any alteration since its execution, then we insist—

1.  That it shows the true character of the transaction between the parties was, an absolute sale of the slaves, Rachel and Reuben, with the right to re-purchase within a reasonable time, and not a mortgage.    Eiland, adm'r, v. Radford, 7 Ala. R. 724; 4 Kent's Com. 144, and note c.

2.  This being the character of the transaction, the bill should have been dismissed, because it does not state an offer to re-purchase at any time, much less within a reasonable time.

3.  That the right to re-purchase, if it exists at all, is con-

Freeman, adm'r, v. Baldwin.

fined to the slaves named in the condition of the bond, and does not extend to the other slaves mentioned in the bill.

4. The bill cannot be sustained upon the idea that there was a parol understanding, or agreement, between the parties, inconsistent with the legal effect of the transaction, as disclosed by the bond and condition.

II. The answer puts the factum of the bond in issue, and consequently cast upon the complainant the onus of proving its existence.

The only evidence offered by the complainant for this purpose, is that of the subscribing witness, Jesse C. Ousley. This witness, if it be insisted that he proves the fact of execution, proves also, at the same time, that which wholly destroys it as a valid instrument, and proves it to be utterly void ; that is, he proves that there has been an erasure of a material part of the condition, since its execution.

The complainant cannot be permitted to impeach the credibility of this witness, because he is the complainant's own witness ; or if he be permitted to do it, and does it successfully, then he destroys the testimony of the only witness who proves the execution of the bond, and thereby destroys the very foundation on which his right to relief depends.

BELSER, for the defendant in error.

1. The remedy in equity is clear, and the demand is not stale.   Sims v. Canfield, Ex'r, 2 Ala. 560 ; Kennedy's Heirs v. Kennedy's Heirs, Ib. 572 ; Sledge's Adm'r v. Clopton, 6 Ib. 589.

2. The mortgage is proved to exist, and also the right to redeem.   The agreement is under seal, and the statute of limitations of four and six years, does not reach the case—twenty and sixteen years are the statutes.   Brown v. Brown, 5 Ala. 508 ; Goodman v. Minter, 8 Porter, 84 ; Dexter, et al. v. Arnold, et al. 1 Sumner, 109.   Again, from what appears on the face of the bill, connected with the proof, a motion to amend the bill, or a special replication was not necessary. St. John v. Garrow, 4 Por. 223 ; Humphries v. Terrel, 1 Ala. 650 ; Dexter, et al. v. Arnold, et al. supra ; Kane v. Bloodgood, 7 Johns. Ch. 90 ; Jones v. Henry, 3 Litt. 50 ; 2 Pirtle's Dig. 92, § 42.

3. The two last examinations of witness, Jesse C. Ously, are irregular. Again, he is not our witness, but the witness, of complainant, so far as these particular examinations are concerned. But even were he *our* witness, we could prove by other testimony, going to show that he erred in a portion of his testimony. Clay's Dig. 614; Bradford v. Bush, 10 Ala. 389. And so is the two last examinations of John Ousley.

4. But independent of the instrument set up by the bill, the parol evidence is sufficient to establish the right to redeem. Heard, Terrell, P. Ousley, and Wm. B. Ousley made it out by their testimony.

5. The children of a female slave, born after the execution of a mortgage, are liable to the demand of the mortgagee. Hughes v. Graves, 1 Litt. 319.

6. The decree is more favorable to the complainant than it should have been, therefore he cannot object.

7. The first bill of sale, exhibited by defendant's answer, is proved by both of the subscribing witnesses thereto, to have been intended as a mortgage, and by other proof. The second bill of sale appended to the said answer, has not been proved by the subscribing witness thereto, or in any other legal way. The mortgage of complainant has been proved by Jesse C. Ousley, and the death of the other subscribing witness, Nancy Ousley, is likewise proved, and it is also proved, that she witnessed it, with J. C. Ousley.

8. The complainant, under any circumstances of the case, has the right to redeem. Anon. 2 Hay. 26; Kim v. Smith, 2 Dev. Eq. 558; May v. Easten, 2 Port. 414; Crane v. Boswell, 1 Green. Ch. 264; Bastrop v. Rutledge; 7 J. J. Marsh. 218; Edgerton v. McRae, 5 How. 183. In Sewall v. Henry, 9 Ala. 33, the whole doctrine is reviewed—the case is different from this.

CHILTON, J.—The decree of the chancellor rendered in this cause is erroneous, and without entering upon an examination of all the points raised in the argument, I will notice such prominent objections to it as will show it cannot be sustained.

32

1. The complainant below founds his right to redeem the slaves in controversy, upon an instrument in writing, made an exhibit to the bill, the execution of which by the defendant is averred, and which is in these words: "The State of Georgia, Putnam county. Know all men by these presents, that I, Hugh Freeman, am held and firmly bound unto David Baldwin, his heirs and assigns, in the just and full sum of sixteen hundred dollars, for the true payment of which I bind myself, my heirs and assigns, firmly by these presents, witness my hand and seal, this 22d day of February, 1825. The condition of the above obligation is such, that if the above bound Hugh Freeman does convey and deliver unto the said David Baldwin, his heirs and assigns, a certain negro woman, Rachel, and her child, named Reuben, conveyed and sold to the said Hugh Freeman, by the said David Baldwin, when the said David pays the said Freeman five hundred and sixty-two dollars, then this bond to be void, otherwise to remain in full force and virtue. This 22d February, 1825. Signed,                         HUGH FREEMAN.
Test, Jesse C. Ousley, Nancy Ousley."

The defendant, in his answer to the allegation of the bill, charging the execution of the said instrument above copied, "denies that he ever executed and delivered to complainant the instrument in writing above set forth, and further answers, that he never signed any agreement which gave to complainant the power of redeeming the said slaves as charged." Thus it appears the *factum* of the instrument being denied by the answer, it was necessary to prove its execution. In order to do this, the complainant examined as a witness, Jesse C. Ousley, one of the subscribing witnesses, (the other witness, Nancy Ousley, having departed this life,) who testifies that the said bond from Hugh Freeman to David Baldwin was not in the same condition when he last saw it, that it was in when it was executed. That he was the draftsman of the instrument, and that since it was executed and delivered, that portion of said instrument which prescribed the time when the complainant was to pay Freeman the $562, was erased. That the same bond was shown him by the attorney of complainant some years previous, when a suit

was pending in that state upon it.   Now this being all the proof in regard to the execution of the instrument, we think it too clear to admit of argument, that it does not sustain the allegation of the bill, which is denied by the answer.   The time when the money was to be paid by Baldwin to Freeman was a material part of the contract, and if this witness is to be believed, this has been erased.   In Brown v. Jones, 3 Porter's Rep. 420, it was held to be a good plea to an action upon a promissory note, that the words, " with interest from date," have been added after its execution, without the maker's knowledge or consent.   The same doctrine was re-affirmed in the case of Harris v. Bradford, 4 Ala. Rep. 214. The alteration having been made while the bond was in possession of Baldwin, and remaining wholly unexplained by any proof, we must necessarily infer it was so altered by his consent, and in this event, he can claim nothing by it.

But it is insisted, that this witness having been examined several times, contradicts himself; and further, that it is shown by the deposition of George W. Towns, that he has made contradictory statements, and that he is therefore not to be credited.   If this be granted, the effect would be to destroy his whole proof, which would leave the instrument, which is the foundation of the complainant's right to redeem, unsupported by any proof, and the answer, which is directly responsive, and which puts its execution in issue, must, in such case prevail.

2. But there is another, and still more potent objection to granting the relief prayed by the bill.   Whether we regard the instrument relied on as a mortgage, or as a conditional sale, the complainant should have sought his remedy within the time prescribed by the statute of limitations in analagous cases at law.   The instrument bears date the 22d February, 1825 ; this bill was filed on the 21st November, 1839; a period of nearly fifteen years elapsed, after the cause of action accrued, before the complainant resorted to his supposed remedy by suit.   The complainant and [defendant both resided near each other in the State of Georgia up to the year 1836, at which time the defendant removed and settled in the county of Macon, in this State.   The defendant below relied upon the bar of the statute of limitations of Georgia, of

four years, and the statute of this State, which by analogy
to the action of detinue, is six years.  The statute of Geor-
gia relied upon by the answer was, in our opinion, a com-
plete bar to the relief.  The cause of action having been ex-
tinguished by the law of Georgia, the right to redeem the
slaves, if such right ever existed, as founded on the instru-
ment above referred to, cannot be enforced here.  The ef-
fect of the statutary bar, where the party has possession ad-
verse to the complainant, as in this case, is not only to ex-
tinguish the remedy, but invests the possessor with the ab-
solute right to the property.  To apply our own statute to
this case, dating its commencement from the removal of
Freeman to this State, would be the creation of new rights,
and the divestiture of a title which had become absolute and
perfect under the laws of a sister State—such would be con-
trary to the uniform current of the decisions upon this sub-
ject.   Story's Confl. Laws, § 582; Bulgee v. Roche, 11 Pick.
Rep. 36 ; Sims v. Canfield's Ex'r, 2 Ala. Rep. 564, Towns
v. Bardwell, 1 Stew. & P. Rep. 36 ; Doyle v. Bouler, 7 Ala.
Rep. 246 ; Goodman v. Monks, 8 Porter's Rep. 95, and cases
there cited.   The proof made by the complainant in this
case, of admissions on the part of Freeman, do not establish
a continuing trust, which would avoid the statute.   The
witness, *Head*, speaks of declarations· made at the time of
the execution of the first bill of sale in 1824.   *Terrel* speaks
of admissions of Freeman as late as 1828, in which he is re-
presented as saying, that he wished Baldwin would pay him
the money he had loaned him, and take the negroes, as he
did not wish to raise a family of negroes for him.   P. Ousley
proves similar admissions as far down as 1838, and *William
Ousley*, says, that in 1825, Freeman expressed a willingness
to receive the money he had paid Baldwin, and let him have
the slaves, but acknowledged no right in him to redeem.  I
need not comment upon the inconclusive character of such
proof, so easily fabricated and so difficult to refute.   From
the very nature of things, it must lose much of its force as
testimony, when the finger of time for twenty years has
been at work to efface it from the memory.   This proof, op-

posed as it is, by the testimony of several witnesses, who prove an adverse holding, and by the writing which shows an absolute sale, is not sufficient to countervail the positive denial in the answer. It is a well established principle in the law of evidence, that to enable the court to declare an absolute bill of sale to be but a security in the nature of a mortgage, the proof must be clear and convincing.

3. But it is insisted by the counsel for the defendant in error, that the agreement relied upon is in the nature of a mortgage, and that Freeman set up no adverse title until 1833, when it was shown the money was tendered him, and that the right to redeem still exists; that neither the statute of Georgia nor of this State, under such a state of facts, had perfected a bar when the bill was filed. Let us test this proposition. Granting that the mortgagor may make an absolute conveyance, and take a defeasance from the mortgagee by a separate deed, yet these deeds must, I apprehend, be contemporaneous, and form but one transaction—one agreement. 2 Johns. C. Rep. 189; 2 Greenl. Rep. 152; 12 Mass. Rep. 456. If there was, as in this case, an absolute conveyance, and a year or more after that time, the vendee should execute his bond to permit the vendor to repay the purchase money and take the property so conveyed, without some additional consideration, the last agreement would be a *nude pact*, and under our law, where the consideration of sealed instruments may be inquired into, would be inoperative. But allowing it to operate, what would be its effect? Freeman had no demand upon which he could have sued Baldwin. Suppose the slaves had died after Freeman had held them under his absolute purchase for nine years, could it be successfully maintained that he could have recovered the $562 out of the vendor, by reason of any thing contained in this alledged defeasance? I think not. Fully recognizing the principle that in all cases of doubt courts of equity lean in favor of a mortgage, the terms of this instrument, with the circumstances attendant upon its execution, clearly satisfy my mind it was intended as a conditional sale. The relation of debtor and creditor did not subsist at the time of its execution. The proof shows a mortgage had previously been

given, but which had been cancelled by the execution of an absolute bill of sale. There was no disparity at the time of the sale between the value of the slaves and the amount paid. There are *indicia* which carry conviction to my mind that the parties intended what the instrument itself, in no equivocal terms expresses, that Freeman having purchased the slaves near a year previously, agrees to re-convey them to Baldwin upon his paying $562, the amount paid out by him for them, in a reasonable time, or, as we are advised from the proof, in a year from the date of said agreement. Regarding it as a conditional sale, the instrument was incapable of explanation by parol proof in the absence of fraud, mistake or surprise. McKinstry v. Conly, 12 Ala. Rep. 678. And the bill, being but an application for a specific performance, and Baldwin having delayed the tender of payment for an unreasonable length of time—having waited some nine years before he asserted his claim to enforce the contract, he has violated his contract, and should not be allowed to hold the opposite party to a performance of it.

There are several other views which we might take of the case, made by the proof, showing that the decree should not be sustained, but the above may suffice. The court is unanimous in the opinion that the decree of the chancellor is erroneous. It is therefore reversed, and this court, proceeding to render such decree as the chancery court should have rendered, orders and decrees that the complainant's bill be dismissed, and that the plaintiff in error recover of the defendant in error the cost of this court, and of the said chancery court. See Eiland, adm'r, v. Radford, 7 Ala. Rep. 724, and cases there cited, as to the distinction between a mortgage and conditional sale; also Sewall v. Henry, 9 Ala. Rep. 24.