## BECK *vs.* BLUE.

[TROVER FOR CONVERSION OF SLAVE.]

1. *Conditional sales.*—Under a conditional sale, with a reservation to the vendor of the right to repurchase on certain specfied terms, the law requires promptness and precision on his part, in the assertion of his reserved right, especially when the purchaser pays a fair price for the property.

2. *Same.*—If the contract itself in such case specifies no time within which the vendor is to exercise the right reserved to him, the law requires that he should exercise it within a reasonable time.

3. *Same.*—Although the conduct and declaration of the purchaser, in admitting and recognizing the vendor's right to purchase, as still continuing, may excuse the latter's failure to exercise his right for a period of ten years, up to the death of the purchaser ; yet it does not excuse his failure to assert his right against the administrator for nearly twelve months after his appointment, and eight months after he had sold the property.

Appeal from the Circuit Court of Wilcox.
Tried before Hon. John K. Henry.

Beck v. Blue.

THIS action was brought by John F. Blue, against F. K. Beck, to recover damages for the conversion of a slave, and was commenced on the 8th day of September, 1859. Said Beck was the executor of Daniel W. Sterrett, who died in the fall of 1858, having published his last will and testament, which was admitted to probate in the probate court of Wilcox county, on the 28th day of September, 1858. The slave in controversy came into the possession of Beck, as such executor, under the power conferred on him by the will of said Sterrett. The slave came into the possession of Sterrett by virtue of a verbal contract between him and John F. Blue. The evidence discloses, that in 1848 the sheriff of Wilcox county levied an execution against said Blue, upon a negro man named Bob, the slave in controversy, as his property. Before the day of sale, Blue made a contract with Sterrett for the sale of Bob. The agreement was that Sterrett was to pay for the slave eight hundred dollars, to be paid upon the execution, and was to give to Blue the privilege of redeeming the negro at any future time, by repaying eight hundred dollars, and the hire of the negro, and interest on the money, was to be set off against each other, but Blue was not to be allowed to speculate upon said Sterrett, and if negroes should rise, sell him to somebody else for more than eight hundred dollars and come and redeem him from said Sterrett. The money was paid on the execution by Sterrett, and this was shown to be the value of Bob at that time. Sterrett took possession of the negro at the time of the purchase in July or August, 1848, and retained possession of him from that time, claiming and using him as his own, until Sterrett's death, which occurred in the fall of 1858, in Wilcox county; but said Sterrett never disputed Blue's right to redeem said negro under the contract, but, on the contrary, frequently recognized this right up to a short time before his death. On the 1st of January, 1859, said Beck sold the slave Bob to one Langham, under the power given him by the will of said Sterrett. A short time before the commencement of this suit, Blue tendered to Beck eight hundred dollars and demanded of him the boy, Bob, and Beck refused to deliver him up.

The second affirmative charge of the court below was as follows: "That if the jury believed that in July, 1848, the plaintiff sold the boy Bob to the testator of defendant, with the privilege of redemption upon the payment of eight hundred dollars at any time in the future, and that after the death of Sterrett, defendant, as his executor, sold said boy, with a knowledge of the claim of the plaintiff, and after the sale plaintiff tendered to defendant the sum of eight hundred dollars, and that was the amount for which plaintiff was to repurchase the negro, and that defendant's testator had, up to within a short time before his death, recognized plaintiff's right to redeem—then plaintiff would be entitled to recover in this action." There were other charges given, and several asked and refused, and the rulings of the court in the charges given and refused, to which exceptions were reserved, are now assigned as error. Several other questions were raised upon the record, but as they are not noticed in the opinion of the court, it is thought not necessary to set them out here.

The deaths of the appellant, F. K. Beck, and the appellee, John F. Blue, respectively, having been suggested to the court, the appeal was duly revived in the names of Walter Tate, administrator *de bonis non* of D. W. Sterrett, deceased, appellant, and George H. Strother, administrator of John F. Blue, appellee.

ALEX. WHITE, for appellant.—1. The agreement between Sterrett and Blue was a sale, with the right to repurchase. *Murphy v. Brassfield*, 27 Ala. 639 ; *Conway v. Alexander*, 7 Cranch, 237 ; *Holmes v. Grant*, 8 Paige, 261. There was no time fixed by the contract for the redemption, and this, after a reasonable time had elapsed, without an offer to redeem, gave to Sterrett the power to put an end to the right to redeem, by a sale of the slave. The right to sell is an inherent quality of ownership, and being the owner of the slave, Sterrett had the right to sell, and when in the exercise of this right, his executor did sell, the right to repurchase was gone, because there was no power in the executor to resell. By the sale to Sterrett, the title passed to him, and by the agreement to resell upon the payment of

eight hundred dollars, there could be no resale, and interference with, or unsettling of the title, which was absolute in Sterrett until the condition of the resale was complied with, or offered to be performed.—*Maxwell's Adm'r v. Buggs*, 17 Ver. 176 ; *Lucy v. Bundy*, 9 New Hamp. 298. The title to the slave vested in Sterrett, subject to the defeasance ; it was adverse to the title of Blue, and by lapse of time, matured into a perfect title in six years, after a reasonable time had elapsed for redemption.—*Truman v. Baldwin*, 13 Ala. 246, 254.

The contract must be construed as binding the plaintiff (Blue) to a performance, within a reasonable time, or there was no obligation, and no mutuality in the contract. Ordinarily in conditional sales, or sales with a defeasance, *a time is fixed at which* the condition or defeasance expires, and the title in the vendee becomes absolute, and it is this which constitutes the consideration of the obligation of the vendee. Here then was no time fixed, at which the title was to become absolute, and there was consequently no mutuality in the contract, nothing upon which to rest Sterrett's promise that Blue might redeem, and the contract was *nudum pactum*. There was not even an agreement on the part of Blue that he would redeem. The contract was not in any event binding, until Blue should perform or offer to perform, and in the meantime, Sterrett or his executor had the right to sell the negro.—*Eskride v. Glover*, 5 S. & P. 267 ; *Br. Bk. at Huntsville v. Steele*, 10 Ala. 915 ; *James v. Stiggins*, 13 Ala. 835 ; *Hickman v. Cantrell*, 9 Yerger, 172.

S. J. CUMMINGS, *contra.*—1. The statute of limitations has no application to this case. The proof shows distinctly, that the contract or agreement was, that the plaintiff below might redeem, "at any future time by repaying $800, and the hire of the negro and interest were to be set off against each other."

This is in the nature of a "Welsh" mortgage, in which there is a perpetual right of redemption.—1 Powell on Mortgages, 373 ; *Treswick v. Reed*, 1 Merivale, 114 ; Angell on Lim. 199. If this agreement may be regarded in the light of a trust, as may well be done, the statute of limi-

tations does not apply.—*Loggins v. Head*, 31 Miss., 426 ;
*Anding v. Davis*, 38 Miss. 514. The statute of limitations
in mortgages does not commence running until after for-
feiture. When did the forfeiture occur in this case ? If
at all, not until the death of Sterrett. Up to his death he
always admitted the right of the plaintiff to redeem under
the agreement. He died in the fall of 1858, and this suit
was commenced in Sept., 1859.—*Nevelt v. Bacon*, 32 Miss.
213 ; *Wilkinson v. Flowers*, 37 ib. 579. We cannot say
from the evidence in the record, that even one year elapsed
between the death of Sterrett and the commencement of
this suit. It is correct as a general proposition, that where
the time within which an act is required to be done, is not
specified in the contract, that the act must be done in a
reasonable time. But this rule does not apply, where the
law itself prescribes a time. The defendant, before he sold
the property, was bound to give the plaintiff notice and
call upon him to redeem, under the agreement proved. No
notice was ever given to the plaintiff, and he was never
called on to redeem.—Angell on Lim. 199; *Hart v. TenEyck*,
2 Johns. Ch. R., 100.

JUDGE, J.—The contract between John F. Blue and
David W. Sterrett, as disclosed by the record, was a con-
ditional sale, with a reservation of the right to the vendor
to repurchase on certain agreed terms.—*Freeman, Adm'r,
v. Baldwin*, 13 Ala. 246; *Murphy v. Brassfield*, 27 Ala. 634 ;
*West and Wife v. Hendrix*, 28 Ala. 226 ; *Swift v. Swift*,
36 Ala. 147.

Such a sale, says Chancellor Kent, "is totally distinct,
and not applicable to mortgages." Says the same author
further : "Such defeasible purchases, though narrowly
watched, are valid, and to be taken strictly as independent
dealings between strangers ; and the time limited for the
repurchase, must be precisely observed, or the vendor's
right to reclaim his property will be lost."—4 Kent's
Com. 144.

There is good reason why such sales should be "nar-
rowly watched," and "precisely observed." There is no ob-
ligation on the part of the vendor to repurchase. Should

Beck v. Blue.

the property appreciate in value he may exercise his right, and realize the profit ; should it depreciate in value, or be injured or destroyed, he may decline to repurchase, and permit the loss to fall exclusively on the vendee. Such being the relative situation of the two parties to such a contract, the law requires promptness and precision on the part of the vendor in the assertion of his right to repurchase ; especially when the vendee pays a fair valuation for the property, as he did in the present case.

No definite time was fixed by the contract we are considering, within which the right to repurchase should be exercised. The agreement was that the repurchase might be made "at any future time," and "the hire of the negro, and interest on the purchase money, were to be set off against each other." The latter stipulation was unnecessary, as the title by the contract vested in the vendee, subject to the defeasance, and the purchase money became the absolute property of the vendor ; consequently, the one would not have been liable for hire, nor the other for interest.

The property thus vesting in the vendee, his title was adverse to that of the vendor ; and the latter, within a reasonable time, should have performed, or offered to perform, on his part, the contract of repurchase. If the vendor failed to do this, then, as we have seen, under the stringent rule applicable to such sales, he forfeited his right to reclaim his property ; for when a contract is silent as to the period of performance, the law requires that it shall be executed within a reasonable time.—Shep. Dig. 502, § 184.

It is contended, in effect, on the part of the vendor, that the vendee, as shown by the evidence, frequently recognized, "up to a short period before his death," the right of the vendor to repurchase ; and that this showed that the long delay of the vendor in offering to repurchase, was with the consent and approbation of the vendee, and should not operate to the vendor's prejudice.

Conceding that by the consent of the vendee, the right to repurchase continuously existed to the time of his death, (a period of ten years,) still this continuing assent to the

right necessarily terminated at his death. The will of the vendee was admitted to probate, in the latter part of September, 1858, from which time the possession of his executor commenced. The executor retained the possession until about the 1st of January, 1859, (a period of three months,) when under a power conferred upon him by the will, he sold and delivered the property to one Langham. During the three months of the executor's possession, the vendor made no offer to repurchase, though he had notice before the sale of the property, that a sale was intended. About eleven months after the commencement of the executor's possession, and about eight months after the sale by the executor—nearly eleven years having elapsed since the date of the sale to the vendee—the vendor, for the first time, offered to repurchase the property. Under these circumstances, we are constrained to hold that the offer was not made within a reasonable time.—See *Baldwin, Adm'r, v. Freeman*, 13 Ala. 246. The long indulgence which had been extended to the vendor by the vendee, should have quickened his diligence in reclaiming from the executor.

The second affirmative charge to the jury, when construed in connection with the evidence, is in conflict with the view above expressed, and therefore erroneous.

As what we have said will probably be decisive of the case on another trial, we deem it unnecessary to consider any of the other rulings of the court as presented by the record.

Judgment reversed, and cause remanded.