# SEWALL v. HENRY.

1. Two writings, connected by a reference of one to the other, or simultaneously made in respect to the same subject matter, and proved to be parts of an entire transaction, may be considered and construed as constituting but a single contract, in the same manner, as if embodied in one instrument.

2. S. executed to H. a bill of sale for a negro man, at the price of two hundred and fifty dollars in hand paid: it was agreed at the same time by the vendee, in writing, that in consideration of such sale, he *would sell* to the vendor the slave in question at the price stated in the bill, "if applied for on the first day of January next" thereafter: *Held*, that these several writings did not constitute a mortgage, nor could it be intended that the latter was a mere undertaking by the vendee to stipulate with the vendor for a re-sale on the day designated, but in itself it provided for a re-sale, and left nothing open for future adjustment.

3. *Semble*: There is no difference, in point of law, between a sale for a price paid, or to be paid, which is to become absolute on a particular event, and a purchase accompanied by an agreement to re-sell upon certain agreed terms. In both cases the sale is to be regarded as conditional; and if the condition which is to defeat it, is promptly performed, in the one case the title will not vest in the vendee, and in the other it will be divested.

Writ of Error to the Circuit Court. of Mobile.

This was an action of detinue, at the suit of the defendant in error, to recover a slave named Tom. The cause was tried upon the general issue, a verdict returned for the plaintiff, which assessed the value of the slave and damages for his detention, on which judgment was accordingly rendered.

On the trial, a bill of exceptions was sealed at the instance of the defendant. To make out his case, the plaintiff offered in evidence a writing of the following tenor, viz : "Received, Mobile, 5th July, 1841, of George G. Henry, two hundred and fifty dollars, in full for a negro man named Tom, aged about twenty-four years, which negro I warrant a slave for life—the title to defend against the claim of all persons, and I believe free from any disease. KIAH B. SEWALL." "Witness, J. A. ROBERTS." Roberts, the subscribing witness, was

then introduced, and testified, that the slave in question was delivered to the plaintiff, and remained in his possession until he was hired on a steamboat, when he runaway. Witness considered the sum expressed in the bill of sale a fair price for the slave, though he was hired on the steamboat " for thirty dollars a month, and would probably bring fifteen· dollars a month." That the consideration moving from the plaintiff to the defendant was made up by a note of one hundred and fifty dollars, due by one Gager to the plaintiff, and the payment of one hundred dollars in cash ; the plaintiff had. no demand against the defendant, due by account, note or otherwise, nor was there any agreement of the parties, who should bear the loss if the slave should die.

The defendant adduced the following paper, viz : "Mobile, July 5, 1841, I have this day witnessed an agreement between Mr. K. B. Sewall, and Mr. George G. Henry, in which it is understood that the latter will sell to the former a man named Tom, aged about twenty-four years, for two hundred and fifty-dollars, if applied for on the first day of January next. J. A. ROBERTS." It was proved by Roberts, that this writing, as well as the bill of sale, were in the hand-writing of the plaintiff, and at his request were attested by the witness, both at the same time, and as parts of an entire transaction. Witness was the principal clerk of the plaintiff, selling goods, collecting his debts and taking care of his property ; and during his absence from the State, or Mobile, was his sole agent in the city, and so continued until after the commencement of this suit. *Further*, that defendant tendered him two hundred and fifty dollars, in the presence of Sydney T. Douglass, on account of the contract evidenced by the writings above set forth, on the first day of January, 1842—the plaintiff being absent from the city at that time. Witness requested that the money might remain in the hands of Douglass until plaintiff's return, and upon plaintiff's return, he informed him that the money was ready for him.

Douglass was also introduced as a witness, and proved the tender, substantially as stated by Roberts, and the retention of the money until the plaintiff's return to Mobile, when, on behalf of the defendant, he offered to pay it to him ; but the plaintiff refused to accept it.

4

Sewall v. Henry.

The plaintiff was absent at the north during the latter part of the summer of 1841 ; defendant spoke to Roberts about the money, previous to January, 1842, but the latter not knowing whether he ought to receive it before that time, wrote to the plaintiff, and received an answer authorizing him to receive the money, or to make arrangements for its reception at any time. After this, Roberts spoke of the slave to another person—expressed the opinion that he could be purchased cheap, and said the defendant had the control of him.

Another witness testified that Roberts showed him a slave named Tom, in the summer of 1841, at the store of the plaintiff, while the latter was absent—remarking that he was mortgaged to the plaintiff, to secure two hundred and fifty dollars, on the first day of January following ; but, until that time, the defendant had the control of him, and he thought he might be purchased cheap. That if the money was not paid on the day stated, the slave would become the property of the plaintiff, but the plaintiff would not object to a sale by the defendant previously.

Another witness, who had formerly owned the slave in question, stated, that in the summer of 1841, he was worth $400 or $450.

The Court charged the jury, that the question to be decided was, whether the transaction between the parties was a mortgage, or an absolute sale, or a sale with such condition annexed to it, as did not amount to a mortgage. If it was a mortgage, the defendant had the right to redeem, and a tender and refusal of the amount due on the first day of January, 1842, was a compliance with the condition, and discharged the mortgage. But if it was not a mortgage, but an absolute sale, or a sale with a condition, which was simply a distinct collateral promise or agreement, to resell to the defendant, the slave at a future time, which agreement was entered into without the consideration of any debt due from the defendant to the plaintiff, then, although the defendant did tender the amount mentioned in said agreement, at the time therein mentioned, the plaintiff was entitled to recover in this action, and the defendant's remedy was on the agreement.

*Further*, that upon the face of the papers, the transaction was not a mortgage ; but the jury might determine from the evidence, whether it was intended by the parties to be such ; that the best criterion of a mortgage was a debt from the mortgagor to the mortgagee. They might also consider the value of the slave, as compared with the price paid for him by the plaintiff, to enable them to form a correct conclusion as to the intention of the parties.

The defendant's counsel prayed the Court to charge the jury, that as the two papers were made at the same time, and related to the same subject, they were to be construed together, and that the jury might infer that the paper executed by the defendant, was the consideration for that executed by the plaintiff. But this prayer was refused, and the Court instructed the jury that the two papers were to be construed together, yet they were not to infer from them such a contract as would in itself make the transaction a mortgage.

The jury were also charged, that if, at the time of the making the contract between the parties, there was a re-sale of the property to the defendant, and the agreement on the part of the plaintiff, was merely intended to give time to the defendant to pay the price, then, if at the expiration of that time, the money was tendered to the plaintiff, the right of property vested in the defendant. But if the agreement was intended merely as an undertaking to re-sell, at a future day, then the title to the slave did not revest in the defendant, though the money was tendered, unless a re-sale was made ; and in such case, defendant's remedy would be on the agreement.

The defendant's counsel further prayed the Court to charge the jury, that if, from the evidence, they believed the transaction between the parties was a conditional sale, and that there was a legal tender of the sum specified in the condition, on the day limited for its payment, which the defendant refused to accept, such a tender and refusal was a compliance with the condition on the part of the defendant, and reinvested him with the title to the slave in question, and the plaintiff could not recover ; which charge was refused.

K. B. Sewall, *in propria persona,* made the following

points for the plaintiff in error : 1. The two writings offered in evidence, are to be considered as parts of an entire transaction, and both taken together constitute a mortgage. [3 Phil. Ev. C. & H.'s notes, 1420; 2 Bibb's Rep. 610; 7 Monr. Rep. 344-7; 5 Pick. Rep. 395; 7 Wend. Rep. 248; 2 Fairf. Rep. 434; 3 Id. 346-9; 2 Sumn. Rep. 531, 541.] The form in which the contract of the parties is expressed is immaterial, we must look to the substance of the thing, and endeavor to ascertain the intention of the parties. [2 Sumn. Rep. 533-4; 5 Binn. Rep. 499; 8 Johns. Rep. 95; 4 Pick. Rep. 349; 7 Id. 157; 10 Sim. Rep. 386; 19 Ves. Rep. 413; 7 Id. 406.]

2. If the transaction is not a mortgage, it is a conditional sale, to be defeated by the payment of the sum stipulated, by the defendant, on a day certain. But whether it be a mortgage, or a conditional sale, the defendant became reinvested with the right of property in the slave, by the tender of the money. [5 Stew. & P. 91; 1 Porter's Rep. 421; 6 N. H. Rep. 12; 8 Id. 359; 2 Pick. Rep. 210; 12 Wend. Rep. 61; 10 Id. 374; 4 Greenl. Rep. 495; 1 Cranch's Rep. 321; 18 Johns. Rep. 110; 5 Yerger's Rep. 99; 10 Id. 142; 7 Conn. Rep. 143, 409; 2 Edwards' Ch. Rep. 138, 142; 10 Pick. Rep. 228.]

3. In addition to the import of the writings, the testimony of the witnesses shows that there was not an absolute sale of the slaves—the disparity between the amount paid by the plaintiff, and the true value of the slave, if it were a matter of doubt, would be decisive. [Co. Lit. 204, b. note 1; 7 Cranch's Rep. 241; 5 Ala. Rep. 698.]

4. It is apparent from the position stated, that the rulings of the Circuit Court are erroneous, in respect to the character of the transaction, and the effect of a tender of the money. [2 Mass. Rep. 403.] *Besides this*, the Court should have expounded to the jury, the legal effect of the writings. [1 Ala. R. N. S. 609.] It is equally clear that the jury must have been misled, even where the court did not palpably mistake the law. [1 Ala. Rep. N. S. 423.]

J. A. CAMPBELL, for the defendant in error. The papers before the jury, show that there was no debt owing by the

Sewall v. Henry.

defendant to the plaintiff, and consequently they do not amount to a mortgage. This being the case, the defendant had no equity of redemption convertible into a legal title. [1 Powell on Mort. 138; 1 Vern. Rep. 213; 1 P. Wm. Rep. 268; 2 Atk. Rep. 494; 1 Bro. P. C. 149; 1 Ball & B. Rep. 274; 1 R. & M. Rep. 506; 1 Call's Rep. 280; 5 Leigh's R. 434; 7 Cranch's Rep. 237; 2 Bibb's Rep. 224; 14 Pick. R. 467.] The contract to re-sell on a certain day, did not give to the defendant *jus in re*, but his remedy for a breach of contract must be asserted by an action sounding in damages; he could not, if out of possession, maintain *detinue*, and consequently, if in possession, cannot defend himself against it, when brought by one who has *jus ad rem*. [Poth. on Ob. 151; 1 N. Hamp. Rep. 295; 4 Mass. Rep. 474: 3 Pick. R. 38; 5 Greenl. Rep. 277.] The title to property cannot be changed without the consent of both parties. [22 Eng. Com. L. Rep. 122; 12 Wheat. R. 192.]

It was plainly submitted to the jury to inquire, whether there was a mortgage, or a conditional sale, by the defendant to the plaintiff, and by their verdict they have affirmed there was neither. The transaction was a sale by the defendant to the plaintiff, with an undertaking by the latter to re-sell to the former at the same price, on the first day of January, 1842. By the sale, the title to the property vested in the plaintiff, and could not be divested without his assent— his engagement to resell, was a substantive and independent stipulation, and to confer *jus in re*, it is necessary that the plaintiff should have voluntarily parted with the property.

It was conceded by the Court, that it was allowable for the defendant to shew by extrinsic proof, that the engagement by the plaintiff to re-sell, operated as a re-sale, with the right in the latter, if the money was not paid or tendered at the day appointed, to say that the defendant should not claim any benefit from the contract. Evidence was also permitted to show that the transaction was a mortgage, and at whose risk the property remained up to the first January, 1842. Taking the charge to the jury, and the refusal to instruct them as prayed, and it will be seen that the law was not incorrectly ruled; nor could the jury have been misled by it.

The verdict affirms, that the plaintiff's agreement was to

re-sell, if the defendant applied on a given day, and that the latter did not by that agreement acquire a right of property in the thing.    In the Congregational Church at Mobile v. Morris, 8 Ala. Rep. 182, this Court declined to consider a charge based upon an assumption of fact, the existence of which was negatived by the jury.    The construction of the papers in the present case, is an unimportant matter, as the jury have found upon a view of all the evidence, that they do not constitute a mortgage, or a sale *in praesenti*, to be consummated at a future time.

COLLIER, C. J.—Two writings, connected by a reference of one to the other, may be considered and construed as parts of an entire transaction, and as if they were embodied in one instrument.    [18 Johns. Rep. 107 ; 4 Wend. Rep. 374 ; 5 Pick. Rep. 395 ; 1 J. J. Marsh. Rep. 200 ; Bates & Hines v. The Bank of Alabama, 2 Ala. Rep. 275 ; 17 Johns. Rep. 29 ; 2 Bibb's R. 610 ; 3 Fairf. R. 346 ; 3 Pick. Rep. 38.]

In Dillingham v. Estill, 3 Dana's Rep. 21, it appears, that an action was brought by the latter against the former for the breach of a warranty of soundness contained in a bill of sale of two slaves, to which it was pleaded that the following writing, viz :   " I, Benjamin Estill, release said Dillingham from any responsibility of said negroes, as witness my hand,—BENJAMIN ESTILL,"—was executed simultaneously with the bill of sale, and was an integral part of the contract of sale, intended to operate as a defeasance of the warranty.    It was objected, that the writing pleaded could not be connected with the bill of sale by parol testimony, or by averment merely.    The Court said, " it has been decided that one writing cannot be connected with another, unless it in some way refers to it.    But if that here relied on was contemporaneous with the bill of sale, it can be understood as referring to it without any parol proof.    For surely, if a vendor of slaves makes a bill of sale with warranty, and *at the same time*, the vendee delivered to him a writing, stipulating that he shall not be responsible for " the *said negroes*," the latter agreement might, without any extraneous proof, be understood to refer to the former, and to mean that the vendor

shall not be responsible on his formal warranty. It would not be inconsistent with either of the writings, or with any rule of evidence, to prove that they were given at the same time; and, indeed, as that given by the appellee, has no.date, the fact of identity as to date, is far from being intrinsically improbable. Then, the fact being sufficiently averred in the plea, is admitted by the demurrer."

Heywood v. Perrin, 10 Pick. Rep. 228, was an action of assumpsit on a promissory note, payable on demand, at the foot of which was a memorandum, as follows: "One half payable in 12 months, the balance in 24 months." *Held*, that it was competent for either party to the note to prove by parol evidence, the time when, by whom, and the circumstances under which the memorandum was made. It was thereupon proved to have been affixed to the note before it was delivered to the payee; and the Court held, that it was *a part of the contract*, and could not be contradicted by parol evidence. *So it has been decided*, that where a deed and separate agreement were construed an absolute sale, parol evidence, to show that a mortgage was intended, could not be received. [8 Conn. Rep. 177.] And where they import a mortgage, parol evidence is inadmissible to show that an absolute sale was intended. [7 Wend. Rep. 248; 5 Binn. R. 499.]

It is said to be generally the province of the Court to construe instruments, where the meaning is to be collected from the writing, without the aid of extrinsic proof, yet where the meaning is to be ascertained by facts *aliunde*, in connection with the written language, very much must be left to the jury. In such cases it has been laid down, that the construction is "usually matter of fact for the jury;" again, that "an admixture of parol with written evidence draws the whole to the jury." In Etting v. The Bank of the United States, 11 Wheat. Rep. 59, it was held, that although it may be the province of the Court to construe written instruments, yet where the effect of such instruments depends, not merely on the construction and meaning of the instrument, but upon collateral facts *in pais*, and extrinsic circumstances, the inferences of fact to be drawn from them, are to be left to the jury. See further, 3 Phil. Ev. C. & H.'s notes, 1420.]

In the case at bar, the bill of sale made by the defendant to the plaintiff, and the stipulation to re-sell the slave by the latter to his vendor, if demanded on a day designated, were made on the same day, and relate to the same subject matter. This perhaps is quite sufficient to show, that both instruments evidence but a single contract. But they describe a slave of the same name and age, and express the same sum as a consideration for the sale; and in addition, it was proved, that they were written by the plaintiff, and at his request were attested by an individual, who was his principal clerk, and sole agent when he was absent from Mobile—in fact, that they were both completed at the same time, and as parts of an entire transaction. We must then consider them as if they were written on the same sheet, or *expressly* referred to each other.

The contract may be thus briefly stated; the defendant sold to the plaintiff the slave, for two hundred and fifty dollars, which sum was paid: in consideration of such sale, the plaintiff agreed that the right of property and possession should revest in the defendant, if he would pay him a sum of money equal to what is expressed in the bill of sale, upon an appointed day. It cannot be inferred from the terms employed in the writing, which may perhaps with propriety be called a defeasance, that the plaintiff would, on the day designated, stipulate with the defendant for a sale of the slave. The parties intended, at the time the bill of sale was executed, to provide for a resale to the defendant, and leave nothing open for a future agreement. Every thing that was necessary to consummate it, was doubtless supposed to be done, with the exception of the tender of the money, by the defendant, at the appointed day, and the delivery of the slave. This being the obvious intention, as indicated by the writings, without the aid of extrinsic proof, it must be upheld. But if the words employed, when literally interpreted, warranted a different conclusion, it would be proper to sacrifice the letter, in order to subserve the intention. [Bates & Hines v. The Bank of Ala., 2 Ala. Rep. 275; Whitsett v. Womack, use, &c: 8 Ala. Rep.    .]

The cases of conditional sales, or defeasable purchases, are distinguishable from mortgages. They are to be taken

strictly as independent dealings between strangers; and the time limited for the re-purchase must be precisely observed, or the vendor's right to reclaim his property will be lost. [4 Kent's Com. 4 ed. 144; 1 Russ. & M. Rep. 506.] Where it is doubtful whether the parties intended a mortgage, or a conditional sale, Courts of Equity incline to consider the transaction a mortgage, because it is more benign in its operation. "The difference between them is, that the former is a security for a debt; and the latter is a purchase for a price paid, or to be paid, to become absolute on a particular event; or a purchase accompanied by an agreement to re-sell upon particular terms. It is the latter kind that runs so nearly into a mortgage." Again: "But there is no rule of law, that a sale shall not be made conditionally. In each case, the only difficulty is to ascertain the character of the transaction." The usual badges of a mortgage are a previous debt, or a present advance of money upon *loan;* for which some evidence is taken, obliging the borrower personally to the absolute payment. [1 Dev. Eq. Rep. 373.] But if the debt be extinguished by the agreement of the parties, or the money advanced is not by way of loan, and the vendor has the privilege of refunding, if he pleases, by a given time, and thereby entitle himself to a re-conveyance, it is a conditional sale. [2 Ball & B. Rep. 274; 7 Cranch's Rep. 237; 1 Paige's R. 56; 2 Edwards' Rep. 138; 14 Pick. Rep. 467; 2 Sumn. R. 534.]

In the case cited from 7 Cranch, Chief Justice Marshall said, "To deny the power of two individuals capable of acting for themselves, to make a contract for the purchase or sale of lands, defeasible by the payment of money at a future day, or, in other words, to make a sale with a reservation to the vendor of the right to repurchase the same land at a fixed price, and at a specified time, would be to transfer to the Court of Chancery, in a considerable degree, the guardianship of adults, as well as infants. Such contracts are certainly not prohibited by the letter or policy of the law." *Further,* "The want of a covenant to repay the money, is not complete evidence that a conditional sale was intended, but is a circumstance of no inconsiderable importance. If the vendee must be restrained to his principal and interest,

that principal and interest ought to be secure.    It is therefore
a necessary ingredient in a mortgage, that the mortgagee
should have a remedy against the person of the debtor.    If
this remedy really exist, its not being reserved in terms will
not affect the case.    But it must exist in order to justify a
construction which overrules the express words of the instru-
ment," which are a formal stipulation to re-sell.    See, also,
8 Conn. Rep. 143; 9 Yerg. Rep. 172; Hilliard on Sales,
18, 19.

In Eiland, adm'r, v. Radford, 7 Ala. Rep. 724, the intes-
tate of the plaintiff made an absolute bill of sale of a slave,
to the defendant; afterwards the latter executed a defeasance,
by which he stipulated to deliver to the vendor the same
slave, provided he repaid him, on a day therein designated, a
sum equal to that expressed in the bill of sale.    We were of
opinion that the two writings imported a conditional sale;
that although it was sometimes difficult to distinguish such
contracts from mortgages, yet there are certain tests which
may be successfully applied in doubtful cases.    Among
which the following were enumerated, viz:  Did the relation
of debtor and creditor subsist before the alledged sale?    Did
the transaction commence by a proposition to lend or borrow
money?    Was there a great disparity between the value of
the property, and the price agreed to be given for it?    Did
the vendor continue bound for the debt?    If either of these
facts exist, it was supposed that they indicated the transac-
tion to be a mortgage, unless the effect was paralyzed by some
other opposing feature in the case.

The citations we have made, very clearly show, that there
is no difference in point of law, between a sale for a price
paid, or to be paid, which is to become absolute on a particu-
lar event, and a purchase accompanied by an agreement to
resell upon certain agreed terms.    In both cases, the sale is
to be regarded as conditional, and if the condition which is
to defeat it, is promptly performed, in the one case the title
will not vest in the vendee, and in the other it will be divest-
ed.    If the condition be performed, or an offer made to per-
form it, at the time stipulated, not only *jus ad rem*, but *jus
in re* will vest in the party who the contract provides shall
become the proprietor of the thing.

We do not understand that the sufficiency of the tender has been questioned; nor are we warranted by the record in indulging an inference against it. [6 Ala. Rep. 226.] Assuming then, that the amount stipulated was duly tendered, (or dispensed with,) by the defendant to the plaintiff, or his agent, on the day agreed on, and we think there can be no doubt that the right to the possession of the slave vested in the defendant, the vendor, and that he might maintain an action of *detinue*, or if in possession, might successfully defend himself against the vendee.

It is not necessary to give to the ruling of the Circuit Court a minute and critical examination; for it is clear that its judgment cannot be supported. The jury should have been informed, that if the writings in respect to the sale, and resale, of the slave in question, were made at the same time, and the defeasance was assented to by the plaintiff, then they evidenced an entire transaction; that the contract was not a mortgage, but operated as a conditional sale, and if a tender of the amount, and at the time contemplated by the contract, was made by the plaintiff, to the vendee, or his agent, or such tender was dispensed with or waived, then the right to the possession of the slave revested in the defendant, the vendor, and a verdict should be returned in his favor.

The interpretation of the writings, (their connection being shown, or perhaps inferred,) devolved upon the Court, and it should not have been referred to the jury to determine their meaning. Other views prevailed, and we think, that that in charging the jury, and in refusing to instruct them as prayed, they were not only misled, but the law was misapprehended. The judgment is consequently reversed, and the cause remanded.