## J. P. ASTUGUEVILLE V. B. LOUSTAUNAU.

(Case No. 1657.)

1. HOMESTEAD.— A., an unmarried man, having a fee simple interest of one-third in the property on which he resided, acquired by purchase from one of his step-children, which at the time was incumbered with a trust deed executed by the vendor and the other heirs, and who had also a life estate in an undivided one-sixth of the property inherited from his wife, entered into a written contract with B., on March 15, 1877, by which he conveyed and released to B. all his interest, in consideration that B. should buy the property when sold under the trust deed, and then convey it to A. for the same amount B. might pay for it. B. purchased at trust sale and took notes from A. secured by trust deed for the amount he had bid and paid. The property was sold to a third party under that second deed of trust, A. still residing on it. In a suit brought by the last purchaser against A. for the property, *held:*

(1) The title of A. passed by his contract with B. stipulating for a conveyance to A. for the amount B. might be required to pay at the first trust sale.

(2) The agreement of March 15, 1877, the subsequent purchase by B., and his compliance with its terms, vested in A. under the deed which he received, a title which rendered the property subject to sale in satisfaction of the notes given by A., bereft of all homestead claim.

(3) The agreement of March 15, 1877, was not in violation of sec. 50, art. 16, of the state constitution.

(4) No mortgage or other lien was intended to be given by the instrument of March 15, 1877.

(5) A mortgage is a security for a debt, while a conditional sale is a purchase for a price paid or to be paid, to become absolute on a particular event, or a purchase accompanied by an agreement to resell upon particular terms.

(6) Sec. 50, art. 16, of the constitution imposes a restriction on the power of the husband to sell the homestead only when he is a married man, and in such case a sale cannot be made without the wife's consent given in the manner prescribed by law.

(7) If the owner of a homestead be an unmarried man he may sell the homestead as he may any other property; and it is ordinarily true that he who has unrestricted power to sell may mortgage.

(8) The contract of March 15, 1877, was not in violation of the last clause of the constitution above referred to, which provides that "all *pretended* sales of the homestead involving any condition of defeasance shall be void." The word *pretended* has reference to feigned, and not to real, sales.

(9) The constitution does not prohibit a sale of the homestead, made with an agreement whereby the vendor may re-acquire the title.

(10) A defeasance carries with it the idea of nullity; it is described as being a condition annexed to a deed, which, being performed, the deed is rendered null.

(11) The purchase, at the second trust sale, the proceedings being regular, acquired title.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

Appellee brought this suit, alleging that he was the owner in fee simple of lot No. 1, in block No. 324, in the city of Galveston, and improvements; that appellant wrongfully entered upon the lot and dispossessed him. Appellee made application for and obtained a writ of sequestration.

Appellant filed a general demurrer, general denial and a special plea, alleging that for more than ten years he had used and occupied the lot as the homestead of his family; that he had never abandoned his homestead rights therein, and was continuously in possession until ejected by the writ of sequestration; that in 1877 all the constituents of his family had died or left him, except his step-son, who was a cripple and unable to earn a living, and who depended on appellant for support; that, besides his homestead interest, appellant had an interest in the fee simple of the lot; that previous to 1877 the children of appellant's wife, who were then owners of the fee simple of the lot, subject to appellant's homestead rights, executed a deed of trust on it; that on the 13th day of April, 1877, Pierre Louge became the purchaser, at trustee's sale, of said interest, and on same day sold same to appellant, reserving a vendor's lien to secure purchase money; that the lot was again sold (appellant still using it as a homestead) to satisfy the vendor's lien, and appellee became the purchaser; that appellant's homestead rights were unaffected by the sale to appellee, etc.

Judgment in favor of appellee, a jury being waived.

The property in controversy was the community property of F. Brossier and his wife, Rose Brossier. F. Brossier died about 1865, leaving surviving him his wife, Rose Brossier, and their minor children, Leon, Mary and Felix, who, with the widow, occupied the property as their homestead. Mary was not the daughter of Rose, but the daughter of F. Brossier by a former marriage. Astugueville intermarried with the widow, Rose Brossier, on the 23d day of April, 1870. At that time the three children were all living. Mrs. Rose Astugueville (formerly Brossier) died May, 1874, leaving surviving her husband (appellant), Leon, Felix and Mary. At that time Leon and Felix were minors, residing with appellant on the premises, but Mary had married and ceased to reside thereon.

Felix had his disabilities removed, and married in 1878. Leon died unmarried and without issue in 1881.

On the 20th of December, 1876, Leon Brossier sold his interest in the property to appellant.

On the 17th of September, 1874, Leon and Felix Brossier, and Mary and her husband, John Steger, made a trust deed on their in-

terest. in the property, to secure a note of $1,000 due Isaac Hurt, twelve months after date, John H. Hurt being trustee.

Appellant and one Pierre Logue, on the 15th day of March, A. D. 1877, entered into the following agreement, including agreement of April 10, 1877, which is inserted here following it:

"THE STATE OF TEXAS — *County of Galveston.*

"This indenture, made this the 15th day of March, A. D. 1877, by and between Joseph Polycarpe Astugueville, party of the first part, and Pierre Louge, party of the second part, witnesseth:

"The said Astugueville, in consideration that the said Louge shall, on the 20th day of March, 1877, become the purchaser, at the trustee sale to take place on said day under a deed of trust executed and delivered to John H. Hurt, by Leon and Felix Brossier and Mary and John Steger, on the 17th day of September, A. D. 1874, and for further consideration that said Louge shall purchase said property, to wit, lot No. 1, in block No. 324, in the city of Galveston, with the improvements thereon, and pay for the same out of his (Louge's) own means; and for the further consideration that the said Louge shall, having become the owner of the property aforesaid, sell and transfer the same to the said party of the first part, the said Astugueville, for a sum equal to the amount paid for the same by the said Louge, and to be repaid by the said Louge in three equal payments, falling due, respectively, four, eight and twelve months after date, to be evidenced by the said Astugueville's three promissory notes, bearing interest at the rate of ten per cent. per annum, he (the said Astugueville), should the terms of this agreement be truly carried out by the said Louge, hereby does release and convey unto the said Louge all rights or estate of whatever nature he, the said Astugueville, may now have in lot No. 1, block No. 324, in said city, together with the improvements thereon; it being well understood that should the said Louge fail to comply with the terms of this agreement, then this conveyance of his (said Astugueville's) rights to said property shall be null and void.   And the said Pierre Louge agrees and undertakes with the said Joseph P. Astugueville, that, in consideration that on this day the said Astugueville has renounced and transferred unto him, the said Louge, all his rights and estate in and to the. property hereinbefore described, that he, the said Louge, shall well and truly transfer and sell the property aforesaid to the said Astugueville as soon as he, the said Louge, shall have become the owner thereof, upon the terms and conditions hereinbefore described; the said Pierre Louge retaining a vendor's lien on said property until the value thereof shall have been repaid by said Astugueville.

"In testimony whereof, we hereunto affix our signatures, in Gal-veston, this the 15th day of March, A. D. 1877.

"J. P. ASTUGUEVILLE,

"P. LOUGE.

"Witnessed at the request of J. P. Astugueville and P. Louge:

"P. M. PRATT,

"P. T. LANGUILLE."

"STATE OF TEXAS — *County of Galveston.*

"Whereas, the sale of the property described in the foregoing indenture did not take place on 20th day of March, A. D. 1877, the undersigned agree that the 12th day of April, A. D. 1877, may be substituted in the foregoing contract, whenever the 20th day of March, A. D. 1877, appears therein.

"Witness our hands and scrawls for seals, in Galveston, this 10th day of April, A. D. 1877.

"P. LOUGE,

"Witnesses:                         "J. P. ASTUGUEVILLE.

"P. T. LANGUILLE,

"ARTHUR J. WOLF."

These instruments were both acknowledged before a notary public, and recorded in office of clerk of county court of Galveston county. On the 12th day of April, A. D. 1879, Pierre Louge became the purchaser at trust sale made by the trustee under the Hurt deed of trust, and on the 13th day of April, A. D. 1877, he (Louge) conveyed the property to Astugueville for his three notes of $775 each, due at six, twelve and eighteen months. Astugueville on the same day executed and delivered to P. M. Pratt, trustee, his deed of trust on the property to secure these notes, the trust deed having, in addition to the usual stipulations, an express warranty of title on the part of Astugueville to the purchaser under this deed of trust. Also that all particulars and prerequisites of sale, including advertisement, should be presumed to have been performed. This deed of trust duly acknowledged and recorded.

On the 2d day of April, A. D. 1881, Astugueville and Louge made an additional agreement renewing two of the notes (one having been paid), in consideration of the indulgence of Louge in not foreclosing the deed of trust up to that date.

On the 10th day of June, A. D. 1882, Pratt, the trustee, sold the property, after advertisement. Baptiste Loustaunau, the appellee here, became the purchaser.

*Robert G. Street* and *H. K. Mann*, for appellant, cited: Const. of 1876, General Provisions, sec. 50, art. XVI.

*Wheeler & Rhodes*, for appellee, cited: Ruffier *v.* Womack, 30 Tex., 342; Whitehead *v.* Nickelson, 48 Tex., 528; Alstin *v.* Cundiff, 52 Tex., 460; Pollock on Contracts, p. 446, note B.

STAYTON, ASSOCIATE JUSTICE.— At the time the agreement of March 15, 1877, was made between Astugueville and Louge, the former had only the fee simple title to one-third of the lot, which he had acquired through purchase from one of the children of Brossier, who with the other children, prior to the sale of his interest to Astugueville, had incumbered it with a trust deed to secure the debt due to Hurt.

Astugueville also held a life estate in an undivided one-sixth of the lot, through inheritance from his wife, and it is claimed that he had a homestead interest in one-half of the lot which he was entitled to enjoy during his life.

It is claimed that it was not the intention of Astugueville to part with such interest as he had in the property by the agreement of March 15, 1877, and the subsequent acts contemplated by that instrument, and that the whole transaction between the parties, in connection with the purchase by Louge, under the deed of trust sale, was only intended by the parties as a mortgage, and did not divest such title or right as Astugueville had prior to the date of the agreement between him and Louge.

The intentions of parties when their contracts are reduced to writing must be gathered from the writing itself, considered in the light of the facts surrounding the contracting parties at the time an agreement is made.

It is not claimed in this case that the parties, through accident, mistake or fraud, failed to express in the written instrument their real intentions.

The language of the instrument imports that, in consideration of certain things to be done by Louge, which he obligated himself to perform, the appellant, by that instrument, conveyed to him whatever interest or right he then had in the lot.

It declares that " he, the said Astugueville, should the terms of this agreement be truly carried out by the said Louge, hereby does release and convey unto the said Louge all right or estate of whatsoever nature he, the said Astugueville, may now have in said lot No. 1, block No. 324, together with the improvements thereon, it being well understood that should the said Louge fail to comply with the terms of this agreement, then this conveyance of his (said Astugueville's) rights to said property shall be null and void."

This is the language of a grant *in presenti*, based on acts to be performed by Louge at a future time, and the grantor, having no wife, had full power to make it, and thereby convey whatever interest he then had.

As if to emphasize the fact that the title to Astugueville's interest in the property was to pass with the execution of the instrument, it further declares " that in consideration that *on this day the said Astugueville has renounced and transferred unto him, said Louge*, all his rights and estates in and to the property hereinbefore described," etc.

It is not pretended that Louge did not do and perform to the letter the acts and things which were the consideration of the conveyance.

In reference to property not homestead, no question could arise as to the effect and validity of the agreement between Astugueville and Louge, and it must be held that this instrument and the subsequent purchase by Louge under the Hurt trust deed, and compliance with the terms of the agreement, vested in Astugueville a title, in so far as the liability of the property to sale in satisfaction of the notes given by Astugueville to Louge is concurred, bereft of all homestead claim whatever, unless the agreement of March 15, 1877, was in violation of sec. 50, art. 16, of the constitution.

The constitution declares that "no mortgage, trust deed or other lien on the homestead shall ever be valid, except for the purchase money thereof or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien shall have been created by the husband alone or together with his wife."

That no mortgage or other lien was intended to be given by the instrument is certainly true; for no such thing can exist in the absence of a debt to be secured by the lien.

The existence of a debt to be secured is the very foundation on which a mortgage or other lien depends; when the one is not found the other cannot exist.

It is this test which is often resorted to for the purpose of determining whether an instrument evidences a mortgage or conditional sale.    It is said that the latter "are to be taken strictly as independent dealings between strangers."    A mortgage "is a security for a debt, while a conditional sale is a purchase for a price paid, or to be paid, to become absolute on a particular event, or a purchase accompanied by an agreement to resell upon particular terms."    Sewall *v.* Henry, 9 Ala., 33.

It is therefore unnecessary to consider, in this case, whether a

man having no wife, but having a family of which he is the head, can legally create a mortgage or other lien on property used as homestead, for purposes other than such as those for which liens on such property are authorized by the constitution.

Taking all of section 50, art. 16, of the constitution into consideration, it would seem, however, that there was no restriction intended to be placed on the owner of property used as homestead, in reference to his power to sell or incumber it with liens, unless such person have a wife.

It imposes a restriction on the power of the husband to sell the homestead only when he is a married man, and in such case a sale cannot be made without the wife's consent given in the manner prescribed by law.

If, however, the head of a family be an unmarried man, he may sell a homestead which he owns just as he may sell any other property; and it is ordinarily true that the owner who has an unrestricted power to sell may mortgage. Jordan v. Imthurn, 51 Tex., 287; Tadlock v. Eccles, 20 Tex., 782.

Under former constitutions, it was held that restrictions placed on the power of a husband to sell or otherwise dispose of homestead property were for the benefit and protection of the wife, and that a contract made by the husband alone might be enforced against the husband after the death of the wife. Brewer v. Wall, 23 Tex., 587; Allison v. Shilling, 27 Tex., 454; Wright v. Hays, 34 Tex., 261.

It then only becomes necessary to inquire whether the agreement in question was in violation of the last clause of the section of the constitution referred to. That clause provides " that all pretended sales of the homestead involving any condition of defeasance shall be void."

Under this clause of the constitution, it is not every sale of the homestead involving a condition of defeasance which it declares shall be void; but it declares that all *pretended* sales involving such conditions shall be void.

The word " pretended " is evidently used in its ordinary sense, and means " feigned," " not real." Was such the character of the sale made by the instrument in question? Certainly not, if considered in the legal effect of the language used, or in the light of the object sought to be accomplished by Astugueville. He had but a small interest in the property, even if, under the law in force at the time of the death of his wife, he would have been entitled to a homestead use of her interest during his life, which in this case need

not be determined. But he desired to become the owner of the entire lot; such he could become only by the purchase of that which belonged to others and in their hands was charged with a debt which could be enforced against it.

Louge was willing to buy the entire property and sell it to him, if he could be secure in so doing. To acquire such title it became necessary to have whatever title or claim the appellant had, as well as the interest of the children of Brossier, which would pass by the sale under the trust deed which they had executed.

In this state of affairs appellant conveyed to Louge all the interest he then had for a real and not a feigned purpose; this conveyance was made for valuable consideration, and that the purpose in making it looked to the re-acquirement of that interest, as well as all other interests in the property, by a subsequent purchase from Louge, after he should acquire title to the whole, did not make it the less real; did not render it a mere pretense.

If the constitution prohibited every sale of a homestead, made with a condition or agreement whereby the seller might re-acquire title, there would be an end of the question; but as before said, such is not the prohibition contained in the constitution. Such a sale, if real, in no way feigned or pretended, would not be in conflict with any provision of the constitution.

A sale, if real, with an agreement to reconvey on named terms, involves validity in the sale and resale; carries with it the idea that the parties intend the title, and not a shadow, to pass and repass, in accordance with the agreement; and that there shall be nullity in no part of the transaction; that the conveyance shall become a living, vital source of title, through which title by the resale may pass.

The title conveyed was evidently intended by the parties to be a vested real interest in Louge, never to become null by reason of the performance of any condition by Astugueville, but on the contrary to exist and become the source of future title, which, through Louge, Astugueville hoped to and did acquire completely, in so far as the same depended on any act of Louge.

A defeasance carries with it the idea of nullity; it is said to be a condition annexed to a deed, which, being performed, the deed is rendered null.

The parties to the agreement evidently never contemplated a defeasance; to prevent the happening of the only event on which there could have been a defeasance, Astugueville contracted with Louge that such event should not occur, and that Louge should him-

self perform, and not Astugueville, the act on the non-performance of which the conveyance to Louge should become null; and for failure of Louge to comply in this respect he would have been responsible in damages. In the minds of the parties the contract involved no condition of defeasance which either expected or desired should occur.

The whole transaction amounted simply to a sale of whatever estate or right Astugueville had, which might become null by the failure of Louge subsequently to perform his part of the contract, to which was coupled an agreement that Astugueville might repurchase the interest which he then conveyed, together with all other interests in the lot, on terms stated.

The transcript does not contain a statement of facts which can be considered, and the case must be disposed of on the conclusions of fact and law contained in the record. We are of the opinion from those that the court did not err in holding that whatever estate or right Astugueville had in the lot passed by the instrument executed by him and Louge.

The court also found that the notice given of the sale at which the appellee bought was such as was contemplated by the agreement between the parties; that the sale was fairly made, and that the property sold for a fair price; and we are not prepared to say that the court below erred in any of those findings.

There being no error in the judgment, it is affirmed.

AFFIRMED.

[Opinion delivered February 29, 1884.]