## EARLE v. MYERS.
## SAME v. SAME.

### APPEALS FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

Nos. 12, 388. Argued October 15, 1907.—Decided December 2, 1907.

In an accounting for attorneys' fees for collection of claims against the Government this court followed the general rule of affirming a finding of fact made and confirmed by both the courts below unless the same is clearly erroneous and held that certain services were of the character generally designated as lobbying services and could not be allowed.

Where an administrator of an attorney performs services and incurs expenses in completing the business in which his intestate and another attorney were interested he should be allowed therefor and those services and expenses as well as those rendered and incurred by the intestate can be settled in one suit where the account has been treated by both parties as one account.

Where one interested in attorney fees for collection of government claims can expect nothing until the amount adjudged has been appropriated, laches will not be charged against him if he bring the suit for an accounting within a reasonable period after the passage of the appropriation act. In this case two years was not unreasonable.

A decree of the Court of Appeals of the District of Columbia reversing the Supreme Court of the District as to some of the findings of fact and conclusions of law and directing a new decree to be entered in accordance with the opinion is not a final decree and an appeal will not lie therefrom to this court.

THE appeals in the above numbers involve the judgment of the Court of Appeals of the District of Columbia (25 App. D. C. 582, *sub nom. Waggaman* v. *Earle*), which modified the decree of the Supreme Court confirming the report of an auditor. The action was brought by the appellees against the administrator of Earle's estate for an accounting, and after issue joined it was referred to an auditor to state the account upon the pleadings and proof placed before him. The auditor reported in favor of allowing the complainant as due the Causten estate the sum of $7,462.20. After the report had been confirmed by

the Supreme Court, each side took an appeal and the Court of Appeals reversed some of the findings and conclusions of law of the court below, and directed a new decree to be entered, in accordance with the opinion of the court. The defendants appealed from that order to this court, and that appeal is the above number 12.

Fearing that there might be some doubt as to the finality of this decree for the purpose of an appeal to this court, the parties, pursuant to the decree of the Court of Appeals, took the case down to the trial court, which referred it to the auditor, who restated the account in accordance with the direction of the Court of Appeals, to which exceptions were filed by the defendant, which were overruled, the auditor's report confirmed and another decree entered, from which an appeal was taken to the Court of Appeals and there affirmed, and from the decree of affirmance an appeal has been taken to this court and allowed, which is number 388.

The material facts which appear in the record are the following: For many years a series of attempts had been made to secure legislation from Congress looking to the payment of claims made by American citizens for damages arising from illegal seizure of their vessels by the government of France, which the United States had, by treaty, undertaken to pay. Such attempts had been unsuccessful, until at length an act was passed by Congress, chapter 25 of the Laws of 1885 (23 Stat. 283), which provided for the ascertaining of claims of American citizens for spoliation prior to the thirty-first of July, 1801.

During quite a number of years preceding the act of 1885 one James H. Causten, a resident of the District of Columbia, had accumulated papers, which were regarded as of considerable value in facilitating proofs of these claims. Mr Causten died before the passage of the act of Congress, leaving these papers in the hands of Mr. William E. Earle, who was also interested in the prosecution of said claims, and therefore desired the benefit of the use of these papers, and after the act of Congress Mr. Earle and Mr. Waggaman, the administrator of the estate

of Mr. Causten, entered into a contract as of the date of June 12, 1885, by which Mr. Earle was to be allowed to continue in the possession and exclusive use of these papers in the prosecution of the spoliation claims, for which possession and exclusive use he was to pay to the administrator (Waggaman) twenty-five per centum of all fees which he should receive on account of these claims, "after deducting from all such fees received, or which shall hereafter be received by him, the proper expenses incurred by him, since the passage of the act of Congress referring said cases to the Court of Claims in the prosecution of said French spoliation claims, such as clerk hire, printing, advertising, office rent, and the compensation of other attorneys necessarily associated with him, and in whose compensation said Earle does not share. And settlements between said Earle and said Waggaman, administrator as aforesaid, or his successor in office, shall be made every six months, and the proportionate part of said fees due said administrator shall be paid over to said administrator or his successor in office, at such settlement."

Earle agreed to keep true books of account of all fees and retainers received by him, and also of all expenses attending the prosecution of the claims in which he should be engaged as counsel or otherwise, the books of account to be open at all times for the inspection of the administrator, or his successor in office.

Thereafter proceedings were taken by Earle in the Court of Claims towards proving the claims of his clients, and the action of that court recognizing such claims among others, to a certain extent, was certified to Congress, as provided in the act of 1885.

On March 3, 1891 (26 Stat. 897), Congress made an appropriation in payment of a portion of all claims so certified, and out of this appropriation Mr. Earle received as fees up to July, 1893, the sum of about $38,000, while his books showed an expenditure of over $57,000, leaving Mr. Earle some $18,000 behind. Future legislation was expected, which would turn

this deficit into a profit. It was hoped that a further appropriation would be made in 1893, but that hope was not realized. Mr. Earle died in August, 1893, and an administrator was thereafter appointed. No further appropriation was made until August 3, 1899 (30 Stat. 1161, 1191). Under this appropriation the estate of Earle received some $50,000 in fees.

Negotiations for the settlement of the accounts between the administrator of Earle's estate and the administrator of Causten's estate were proceeded with, but proved unsuccessful, when this suit was instituted by the Causten administrator for an accounting. Pleadings were had in due form, and the case was referred to an auditor of the court for a statement of the account, who, after considerable testimony had been adduced, filed his report and found the sum of $7,462.20 to be due from the defendant to the complainant. Exceptions were filed by both parties, which were overruled by the Supreme Court, and the auditor's report was confirmed.

The Court of Appeals modified the decree entered by the Supreme Court, as already stated.

*Mr. Henry E. Davis* and *Mr. John C. Gittings* for appellant.

*Mr. T. Percy Myers* and *Mr. Michael J. Colbert,* with whom *Mr. S. T. Thomas* was on the brief, for appellees.

Mr. Justice Peckham, after making the foregoing statement, delivered the opinion of the court.

In making up the account the representative of the Earle estate claimed a credit for the sum of $19,558.05 as part of the proper expenses incurred by or in behalf of defendant in obtaining the appropriations above mentioned. The auditor struck out $13,058.05 of such claimed credit, leaving $6,500 as a proper credit in favor of the administrator of Earle. The thirteen thousand and some odd dollars were stricken out by the auditor because of the fact, as he found, that these moneys

were paid for lobbying services, in efforts to secure the appropriation by Congress, which services he held were contrary to public policy and discountenanced by the courts, and therefore not to be allowed as a proper credit. The balance, $6,500, the auditor held that the proof showed had been paid by the defendant for legal services by the individuals named, and that such services were valuable, and the amount paid was not excessive or unreasonable. This amount consisted of three separate items, two items for $2,000 and one item for $2,500.

Upon the argument in the Court of Appeals the defendants' counsel insisted that the whole nineteen thousand dollars should have been allowed as a proper credit, while the plaintiff's counsel asserted that the disallowance of the thirteen thousand dollar credit was right, but that the court erred in admitting the $6,500 as a proper credit. The Court of Appeals, as we have said, affirmed that portion of the decree in which the auditor disallowed the thirteen thousand dollars claimed for credit, but reversed that portion of the decree by which the auditor allowed the credit of $6,500, and directed the decree to be amended by striking out the above credit for that sum. This was upon the ground that the $6,500 claimed was also illegal. The court said that it was impossible to read the record without coming to the conclusion that these alleged services were of the kind known as lobbying services; that, although proof on the subject was meager, yet so far as it went it tended unmistakably to show the illicit character of the services, being personal influence and personal solicitation with members of Congress, and that courts had branded services of a like nature as improper, and for which no recovery would be allowed.

The auditor before whom the case was tried and who heard the witnesses, while holding that certain of the credit claims were illegal as claims for lobbying services, yet held that these particular claims for services performed by members of the bar, and representing the $6,500 allowed, were for proper professional services, and as such should be allowed. The Supreme

Court of the District confirmed the report of the auditor, and thereby held that the credit claimed for the payment of these services was proper.

After a careful examination of the testimony in the case we are unable to concur with the Court of Appeals on this question. We cannot find any evidence to justify a reversal of the report of the auditor, confirmed as it is by the Supreme Court. The payments were proved to have been made, and there is no evidence of any illegality connected with the services performed sufficient to justify an appellate tribunal in reversing the finding of the auditor and the Supreme Court upon this question of fact. It is unnecessary to embody in this opinion a reference to the testimony in the case or to make extracts therefrom, but it is enough to say that we are satisfied, from a careful perusal thereof, that we are right in the conclusions which we have come to.

As to the thirteen thousand dollar credit which the auditor and the Supreme Court and the Court of Appeals have all disallowed, we are of the opinion that there was sufficient evidence to justify its disallowance. The evidence would seem to justify the finding of the auditor that these particular services thus paid for were of the character generally designated as lobbying services, and in such case it is proper to follow the general rule of affirming a finding of fact made and confirmed by the courts below, unless the same be clearly erroneous.

Again, the auditor disallowed in part a claim of some fifteen thousand dollars, which the defendants assert was paid to two other attorneys for their services, under a special agreement which was made between the administrator of the Earle estate and such attorneys. The auditor made a finding of the facts in regard to such employment, and carefully considered the conditions as they appeared in the proof, and stated that he was of the opinion that the services in question did not require the time and attention of these three gentlemen, and that it would not be just to impose the burden of the payment to them upon this case in such a manner as to diminish the small

amount which would be found due and payable to the complainant. He therefore in the account allowed a credit for but one-half of the amount, which he said was in his "judgment a liberal allowance for the present account." Counsel for the defendants have failed to show from the evidence in the record that this item was improperly disposed of by the auditor.

As to the alleged laches on the part of the complainant in bringing this suit, we think the courts below have committed no error in their judgments. The evidence showed that during the time of the life of Mr. Earle, although the books of account were quite meager, yet such as there were had been examined by the administrator of Causten, in the office of Mr. Earle, and that objection had been made to the payment of the moneys to these persons in regard to whom the charge of lobbying services was made. There was no account stated, and the failure to bring suit for an accounting until January, 1901, two years after the appropriation act of 1899, from which payment might be made, cannot be regarded as laches to prevent a recovery in this suit.

The objection that there was in reality no liability on the original contract arising out of services performed by the administrator after the death of William E. Earle cannot be sustained. The accounting has been treated by both parties as one proper to be made for the whole period, including that which elapsed subsequently to the death of Mr. Earle. The defendant recognized this right by making the accounting not only for fees received prior to the death of Mr. Earle, but for such fees as were received under the appropriation act of 1899. The account presented by the Earle estate to the Causten estate admits an indebtedness due from the administrator of the former of something over $2,000, and the account purports to be one between the estate of Earle and the estate of Causten, and it embraces not only fees received by William E. Earle in his lifetime under the appropriation act of 1891, but fees received by the estate of Earle under the appropriation act of 1899. Thus both parties seem to have treated the account as

one account, with reference to the act of 1891 and also to that of 1899, and we think that under the circumstances the defendants should be held liable to account therefor as indicated.

The account should be restated by allowing credit to the defendant of $6,500, the amount paid the attorneys as already stated. As to all other matters, the decree is right. The proper disposition of the case is to dismiss the appeal in No. 12, because the decree appealed from is not a final one, and to reverse the decree in No. 388, for the purpose of making the proper credit to defendants in the account.

*Reversed.*