NO. 3086

House Bill No. 132, Forty-sixth Legislature, is unconstitutional insofar as it attempts to prohibit the solicitation or collection of money for the bona fide purpose of sponsoring, etc., social security legislation; but is constitutional insofar as it makes unlawful the solicitation or collection of money for any pretended (or fraudulent) purpose.

---

OFFICE OF THE ATTORNEY GENERAL

September 12, 1939

Honorable W. Lee O'Daniel
Governor of Texas
Austin, Texas

Dear Governor O'Daniel:

Opinion No. O-1116
Re: Construction of House
Bill No. 132

We are pleased to reply to your request of July 21, 1939, for a construction of House Bill No. 132 of the Forty-sixth Legislature, concerning which you ask the following two questions:

"(1) Will Section 2 of this Act prevent the assembling together of organizations, local or state-wide in their nature and the solicitation of dues or funds from a membership to be used by the organization for the purpose of securing the passage of legislation in their behalf? I would contemplate that such an assembly would do the usual and customary things in forming their organizations and in carrying out the purpose of it. If you advise that they may so assemble, I would like for you to state the extent to which they may go under this Act or, preferably, the limitations which it places upon them.

"(2) This being a Penal Statute, I would like for you to advise if in your opinion its provisions are sufficiently definite to accomplish the expressed purpose and just how far the authorities may go in preventing the collection of funds from persons eligible to receive pensions."

We are attaching to this opinion a copy of House Bill No. 132, so that the same may be referred to in conjunction with this opinion.

Section 2 of the Act makes it "unlawful for any person, firm or corporation to solicit or collect dues or money for himself, or itself, or any organization, association, partnership or corporation for the purpose or pretended

purpose of collecting, or aiding in the collection of, or advertising or sponsoring old age pensions of any kind, or benefits for any person or group of persons from the Social Security program as it applies to old age assistance, blind persons, or dependent and destitute children . . ."

Section of said Act provides:

"Sec. 3. Nothing in this Act shall prohibit persons receiving Social Security Benefits from the State of Texas or from the United States Government, or who are eligible to receive Social Security Benefits from the State of Texas or from the United States Government, from organizing and sponsoring Social Security Legislation".

Nowhere in the Act is there an express prohibition against the formation and activities or organizations of any character. In fact, Section 3 seeks expressly to authorize those over 65 years of age to organize and to sponsor social security legislation. The Act is silent as to whether persons under 65 years of age may organize to sponsor such legislation.

What is prohibited to all persons (by Section 2) is the solicitation and collection of money for the purpose or pretended purpose of sponsoring social security. It matters not how willing the contributor or how unselfish the collector, the collection of money to sponsor governmental aid to the aged, the blind, or dependent children is made a crime by House Bill No. 132, punishable by a term of not more than five years in the penitentiary. In short, the Legislature has said, all persons shall be free to organize for the purpose of sponsoring benevolent legislation of this type, but they are forbidden to use any money, however necessary, in the exercise of this right. Under this statute, it would be unlawful for a Townsend Club to collect dues from its members, and its treasurer would be subject to imprisonment. It must be self-evident that an organization, particularly one that is state-wide in scope must incur certain inevitable expenses for hiring meeting places, for printing bulletins, for postage, and the like. If such an organization cannot collect dues from its members it cannot exist. By forbidding the collection of money for such purposes, the Legislature has forbidden the organization itself as effectively as though it had said: "It shall be unlawful for any persons to organize for the purpose of sponsoring social security legislation." This the Legislature may not do, for Article I, Section 27, of the Texas Constitution declares:

"The citizens shall have the right, in a peaceable manner to assemble together for their common good, and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance."

Freedom of peaceable assembly and freedom of speech are among the most cherished liberties of a free people, and they are guaranteed in unequivocable language by the Bill of Rights of both the United States and the Texas Constitutions.

It is an axiomatic principle of our jurisprudence that those rights which the Constitution protects cannot be made ineffective by removing the necessary incidents to the enjoyment of those rights. The Legislature may not do by indirection what it could not do directly. The inevitable effect of Section 2 of House Bill No. 132 is to render ineffective the peoples' constitutional right "in a peaceable manner to assemble together" for purposes which cannot be anything but lawful. Nor may the exercise of this right be limited (as Section 3 seems to imply) only to those who are eligible to receive old age assistance under existing laws. The State and Federal Constitutions guarantee certain inalienable rights alike to those who have not yet reached the age of 65, as well as to the venerable recipients of governmental largess.

Let us not be misunderstood. We do not wish to imply that the Legislature intended a deliberate assault upon the liberties of our people by the passage of House Bill No. 132. Their motives were of the best. They were seeking only to remedy certain notorious evils which had arisen. They were directing their attention (as stated in the emergency clause of the bill) to "the fact that the people of Texas are being subjected to nefarious advertising and soliciting shcemes that result in the obtaining of money by var ious persons . . ." But in their zeal to correct these abuses, and to restrain the predatory activities of unscrupulous promoters, the Legislature inadvertently forbade the lawful activities of the very persons they were seeking to protect, and in so doing transgressed the constitutional limitations of legislative action.

As stated in 12 Corpus Juris, p. 953:

"But the mere fact that there has been published in a newspaper libelous or scurrilous matter for which the proprietor is subject to punishment under the criminal law does not authorize the police authorities to suppress its future publication; nor is it within the power of a municipal corporation to declare by ordinance that a certain newspaper is a public nuisance and to forbid its sale within the city."

In support of this statement, Corpur Juris cites the opinion of the Texas Court of Criminal Appeals in Ex parte Neill, 22 S.W. 923. Judge Davidson, in that opinion, said:

"The power to prohibit the publication of newspapers is not within the compass of legislative action, in this state, and any law enacted for that purpose would clearly be in derogation of the bill of rights . . . The power to suppress one concedes the power to suppress all, whether such publications are political, secular, religious, decent or indecent, obseene or otherwise.

The doctrine of the Constitution must prevail in this state, which clothes the citizen with liberty to speak, write or publish his opinion on any and all subjects, <u>subject alone to responsibility for the abuse of such privilege</u>." (Underscoring ours).

When self-seeking "promoters" prey upon the credulity of innocent persons, the Legislature may properly restrain the fraudulent activity of these promoters, but in so doing, it must be careful to strike only at the abuse and not the privilege of the innocent victims.

The courts have ever been alert to protect from all manner of legislative encroachment the constitutional guarantee of freedom of speech and press. In Grosjean vs. American Press Company, 207 U.S. 248, 80 L. Ed. 660, the United States Supreme Court struck down a Louisiana statute which imposed a 2% gross receipts tax on newspapers having a circulation of over 20,000. The opinion in that case in reviewing prior decisions on the question states:

"This court had occasion in Near vs. Minnesota, 283 U.S. 713, to discuss at some length the subject in its general aspect. The conclusion there stated is that the object of the constitutional provisions was to prevent previous restraints on publication; and <u>the court was careful not to limit the protection of the right to any particular way of abridging it.</u> (Underscoring ours).

The right to assemble and the right of free speech are not mere abstract principles, but are translatable into practical experience. As said by Winslow, C.J. of the Supreme Court of Wisconsin, dissenting in State vs. Phelps, 128 N.W. 1041:

"The right to vote means the right to vote effectively, not merely to cast a ballot under circumstances where it is certain that it can have no practical effect."

And so the right to assemble and the right to petition as guaranteed by the Constitution of Texas, is the right to assemble and petition effectively; not merely to come together in small groups and discuss questions of mutual interest, without any power to bring their ideas to the attention of others. In order for people who are scattered over the vast expanse that is Texas to band together <u>effectively</u>"for their common good" they must be permitted to pool their resources as well as their idea. In order for them to contribute money to their common cause, someone must be allowed to collect it.

If a group of persons may not designate one of their number to collect dues or contributions from among them in order that the purpose of the organization may be carried out, then freedom of speech and the right to assemble and petition are but meaningless abstractions.

In State vs. Pierce, 163 Wisc. 615, 158 N.W. 696, the Wisconsin Supreme Court declared unconstitutional as

violating the constitutional guarantee of freedom of speech, a statute which forbade one not a candidate or committee-man from spending money outside his own county for political purposes. The language of this opinion is extremely force-ful:

> "If this be not an abridgement of freedom of speech it would be difficult to imagine what would be. Under such a law no pioneer in any reform which de-pends for its success on a change in the law could leave his own county and communicate his sentiments at his own expense to his fellow citizens of other counties without committing a crime. Under such laws no great propaganda for better laws and better political condi-tions which has not been formally taken up by a political party can ever be car-fied on, and the reformer whose eye kindles with the dawning light of a bet-ter day must be content to confine his personal activities to the inhabitants of his own small bailiwick. Almost every foward step in political and gov-ernmental affairs comes as a result of long agitation and discussion in the press, on the rostrum, and in the open forum of personal contact."

The philospphy behind vigilant defense of the un-trammeled expression of ideas has never been more effective-ly expressed than by Justice Holmes, dissenting in Abrams vs. United States, 250 U.S. 616, 40 S. Ct. Rep. 17, 63 L. Ed. 1173:

> "But when men have realized that time has upset many fighting faiths, they may come to believe even more than they believe the very foundations of their own conduct that the ultimate good desired is better reached by free trade in ideas, - that the best test of truth is the power of the thought to get itself accepted in the competition of the market; and that truth is the only ground upon which their wishes safely can be carried out. That at any rate, is the theory of our Consti-tution. It is an experiment, as all life is an experiment."

For the reasons set out in the foregoing discus-sion, it is our opinion that Section 2 of House Bill No. 132 violates Section 27 of Article I of the Texas Constitu-tion insofar as it attempts to prohibit the solicitation and collectien of money for any of the bona fide purposes set out in the Act.

Insofar, however, as Section 2 prohibits the so-licitation or collection of money for the "pretended pur-pose", etc., the section is valid. The word "pretended" has a well defined meaning, i.e., false, unreal, simulated or feigned. 6 Words & Phrases, p. 79 (Third Series).

As said by Stayton, J., in Astugueville vs. Loustaunau, 61 Tex. 233, at p. 239, referring to the use of the word "pretended", in Section 50, Article XVI, of the Texas Constitution:

> "The word 'pretended' is evidently used in its ordinary sense and means 'feigned', 'not real'."

Surely it cannot be questioned but that the Legislature may properly prohibit the collection of money for any fraudulent purpose.

It is a familiar rule that a statute will, if possible, be given a construction so as to render it constitutional. Section 7 of the Act declares:

> "If any part of this Act is held unconstitutional, or otherwise invalid, such unconstitutionality or invalidity shall not impair the remaining part of this Act."

As said by the Court of Criminal Appeals of Texas in Anderson vs. State, 21 S.W. (2d) 499:

> "Thus construed the validity of a part of the section of the act under consideration can be sustained. The act may admit of another construction. However, it is the announcement of the decisions that, where a statute admits of two constructions, one which renders it unconstitutional and one constitutional, the latter construction should be given it. Madden vs. Hardy, 92 Tex. 613, 50 S.W. 926; Railway Company vs. Gross, 47 Tex. 428. Applying the rule thus announced, we are of the opinion that the section of the act under consideration is not invalid in its entirety."

Accordingly, it is our opinion that Section 2 of House Bill No. 132 is constitutional insofar as it prohibits the solicitation and collection of dues or money for the pretended purpose.

Replying specifically to your questions, we beg to advise that Section 2 of this Act, as hereinabove construed, in no manner prevents the assembling together of any organizations, nor does it inhibit the solicitation of dues or funds from the membership, so long as such solicitation and collection is for the bona fide purpose (as distinguished from the pretended, simulated or fraudulent purpose) of sponsoring social security legislation, or for any other lawful purpose.

Replying to your second question, we are of the opinion that Section 2 of House Bill No. 132, as herein construed, is sufficiently definite to enable the district attorneys of the state by criminal prosecution, as provided in Section 4, or the Attorney General by civil suits for injunction, as provided in Section 5, effectively to deter the solicitation or collection of money for private gain upon a

that Section 1 of the Act is entirely valid.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By  /s/ Walter R. Koch

Walter R. Koch
Assistant


WRK:FG:wb


This opinion has been considered in conference, approved, and is now ordered filed.

GERALD C. MANN

ATTORNEY GENERAL OF TEXAS